

Dykema Gossett PLLC
10 South Wacker Drive
Suite 2300
Chicago, Illinois 60606

WWW.DYKEMA.COM

Tel: (312) 876-1700
Fax: (312) 627-2302

**Morgan M. Smith**
Direct Dial: (312) 627-5679
Email: MMSMITH@DYKEMA.COM

April 2, 2009

**Electronic and Regular Mail**

Forrest L. Ingram
Forrest L. Ingram, P.C.
79 W Monroe Street, Suite 900
Chicago, IL 60603
Email: fingram@fingramlaw.com

Re:   *In re EBRO Foods, Inc. and In re EBRO Real Estate Holdings, LLC* (Case Nos. 09-10101 and 09-10104 in the Bankruptcy Court for the Northern District of Illinois).

Dear Forrest:

Dykema represents Bank of America (the "Bank") in the above-captioned bankruptcy cases. As you may know, the Bank made pre-petition loans to EBRO Foods, Inc. and EBRO Real Estate Holdings, LLC (collectively, the "Debtors"), secured by certain of the Debtors' assets, including the Debtors' cash collateral. You are hereby advised and put on notice that the Bank does not consent to the Debtors' use of the Bank's cash collateral in the bankruptcy cases.

To assist in moving these bankruptcy cases toward an efficient resolution, the Bank hereby requests the Debtors act as follows within the next fourteen (14) days:

   1.   Provide the Bank with a strategy for liquidating the Debtors' property in a timely fashion;

   2.   Coordinate with the Bank to schedule a time when the Bank can view the Debtors' operating facilities; and

   3.   Provide the Bank with proof of current insurance on the Debtors' property, including a certificate of insurance and proof of payment.

I look forward to working with you on this matter. Please contact me at your earliest convenience to discuss.

California | Illinois | Michigan | Texas | Washington D.C.

CHICAGO\2651378.1
ID\MMSM - 103648/0160

# Dykema

Forrest L. Ingram
April 2, 2009
Page 2

Regards,

**DYKEMA GOSSETT** PLLC

*[signature]*

Morgan M. Smith

MMSM:mms

Case 09-10104    Doc 49-1    Filed 08/18/09    Entered 08/18/09 11:18:52    Desc Exhibit
A    Page 3 of 19
Case 09-10104    Doc 61-3    Filed 08/18/09    Entered 08/31/09 11:59:45    Desc Exhibit
Page 3 of 12

2C3730954

# PROMISSORY NOTE

$2,450,000.00  
Chicago, Illinois

No. _____  
Date: Aug. 31, 2005  
Due Date: August 31, 2015

1. AGREEMENT TO PAY. For value received, EBRO REAL ESTATE HOLDINGS LLC, an Illinois limited liability company (the "Borrower") hereby promises to pay to the order of LASALLE BANK NATIONAL ASSOCIATION, a national banking association, its successors and assigns (the "Lender"), the principal sum of Two Million Four Hundred Fifty Thousand and 00/100 DOLLARS ($2,450,000.00) (the "Loan"), on or before August 31, 2015 (the "Maturity Date"), at the place and in the manner hereinafter provided, together with interest thereon at the rate or rates described below, and any and all other amounts which may be due and payable hereunder or under any of the Loan Documents (as hereinafter defined) from time to time.

2. INTEREST RATE.

2.1. Interest Prior to August 31, 2010. Interest shall accrue on the outstanding principal balance of this Note from the date hereof through August 31, 2010 at a per annum rate of interest equal to Seven and 429/1000 percent (7.429%).

2.2. Interest Prior to Maturity Date. From September 1, 2010 to August 31, 2015, interest will accrue at a rate equal to Lender's cost of funds plus three and no/100 percent (3%) ("Interest Rate").

2.3. Interest After Default. From and after the Maturity Date or upon the occurrence and during the continuance of an Event of Default, interest shall accrue on the unpaid principal balance during any such period at an annual rate (the "Default Rate") equal to five percent (5.00%) plus the Interest Rate; provided, however, in no event shall the Default Rate exceed the maximum rate permitted by law. The interest accruing under this section shall be immediately due and payable by the Borrower to the holder of this Note upon demand and shall be additional indebtedness evidenced by this Note.

2.4. Interest Calculation. Interest on this Note shall be calculated on the basis of a 360 day year and the actual number of days elapsed in any portion of a month in which interest is due. If any payment to be made by the Borrower hereunder shall become due on a day other than a Business Day, such payment shall be made on the next succeeding Business Day and such extension of time shall be included in computing any interest in respect of such payment.

3. PAYMENT TERMS.

1

3.1. <u>Principal and Interest</u>. Payments of principal and interest due under this Note, if not sooner declared to be due in accordance with the provisions hereof, shall be made as follows:

(a) On the date the proceeds of the Loan are disbursed by the Lender (the "Closing Date") interest on the principal balance of this Note accruing during the period commencing on the Closing Date and ending on the last day of the month in which the Closing Date occurs shall be due and payable.

(b) Commencing on September 30, 2005, and continuing on the last day of each month thereafter through and including July 2010, payments of principal and interest each in the amount of Nineteen Thousand Six Hundred thirty and 81/100 Dollars ($19,630.81) shall be due and payable.

(c) <u>Payments commencing on August 31, 2010, and continuing to the last day of each month thereafter through and including the month in which the Maturity Date occurs will be recalculated based upon the Interest Rate as determined in Section 2.2 above, with a twenty (20) year amortization, of the then outstanding principal balance.</u>

(d) The unpaid principal balance of this Note, if not sooner paid or declared to be due in accordance with the terms hereof, together with all accrued and unpaid interest thereon and any other amounts due and payable hereunder or under any of the Loan Documents shall be due and payable in full on the Maturity Date.

3.2. <u>Application of Payments</u>. Prior to the occurrence of an Event of Default, all payments and prepayments on account of the indebtedness evidenced by this Note shall be applied as follows: (a) first, to fees, expenses, costs and other similar amounts then due and payable to the Lender, including, without limitation any prepayment premium, exit fee or late charges due hereunder, (b) second, to accrued and unpaid interest on the principal balance of this Note, (c) third, to the payment of principal due in the month in which the payment or prepayment is made, (d) fourth, to any escrows, impounds or other amounts which may then be due and payable under the Loan Documents, (e) fifth, to any other amounts then due the Lender hereunder or under any of the Loan Documents, and (f) last, to the unpaid principal balance of this Note in the inverse order of maturity. Any prepayment on account of the indebtedness evidenced by this Note shall not extend or postpone the due date or reduce the amount of any subsequent monthly payment of principal and interest due hereunder. After an Event of Default has occurred and is continuing, payments may be applied by the Lender to amounts owed hereunder and under the Loan Documents in such order as the Lender shall determine, in its sole discretion.

3.3. <u>Method of Payments</u>. All payments of principal and interest hereunder shall be paid by automatic debit, wire transfer, check or in coin or currency which, at the time or times of payment, is the legal tender for public and private debts in the United States of America and shall be made at such place as the Lender or the legal holder or holders of this Note may from time to time appoint in the payment invoice or otherwise in writing, and in the absence of such appointment, then at the offices of the Lender at 135 South La Salle Street, Suite 1225,

2

Chicago, Illinois 60603. Payment made by check shall be deemed paid on the date the Lender receives such check; provided, however, that if such check is subsequently returned to the Lender unpaid due to insufficient funds or otherwise, the payment shall not be deemed to have been made and shall continue to bear interest until collected. Notwithstanding the foregoing, the final payment due under this Note must be made by wire transfer or other immediately available funds. Interest, principal payments and any fees and expenses owed the Lender from time to time will be deducted by the Lender automatically on the due date from the Borrower's account with the Lender, as designated in writing by the Borrower. The Borrower will maintain sufficient funds in the account on the dates the Lender enters debits authorized by this Note. If there are insufficient funds in the account on the date the Lender enters any debit authorized by this Note, the debit will be reversed. The Borrower may terminate this direct debt arrangement at any time by sending written notice to the Lender at the address specified above.

3.4.    Late Charge. If any payment of interest or principal due hereunder is not made within five days after such payment is due in accordance with the terms hereof, then, in addition to the payment of the amount so due, the Borrower shall pay to the Lender a "late charge" of five cents for each whole dollar so overdue to defray part of the cost of collection and handling such late payment. The Borrower agrees that the damages to be sustained by the holder hereof for the detriment caused by any late payment are extremely difficult and impractical to ascertain, and that the amount of five cents for each one dollar due is a reasonable estimate of such damages, does not constitute interest, and is not a penalty.

3.5.    Principal Prepayments.

(a)    Provided that no Event of Default then exists, the Borrower may voluntarily prepay the principal balance of this Note, in whole but not in part, at any time on or after the date hereof, subject to the following conditions:

(i)    Not less than thirty (30) days prior to the date upon which the Borrower desires to make such prepayment, the Borrower shall deliver to the Lender written notice of its intention to prepay this Note in full, which notice shall be irrevocable and state the prepayment date (the "Prepayment Date"), which Prepayment Date shall coincide with a scheduled payment date hereunder;

(ii)    The Borrower shall pay to the Lender, concurrently with such prepayment, a prepayment premium (the "Prepayment Premium") equal to the greater of (A) the "Yield Amount" (as hereinafter defined), and (B) the "Fixed Amount" (as hereinafter defined), provided, however, no Prepayment Premium shall be owing if such prepayment is made on or after the ninetieth (90th) day prior to the Maturity Date; and

(iii)    The Borrower shall pay to the Lender all accrued and unpaid interest through the date of such prepayment on the principal balance being prepaid.

3

(b)    The Borrower acknowledges that the Loan was made on the basis and assumption that the Lender would receive the payments of principal and interest set forth herein for the full term of this Note. Therefore, whenever the maturity of this Note has been accelerated by the Lender by reason of the occurrence of an Event of Default the Prepayment Premium shall be due, in addition to the outstanding principal balance, accrued interest and other sums due hereunder.

(c)    For purposes of this Note, the "Fixed Amount" shall mean one percent (1.00%) of the amount prepaid, and the "Yield Amount" shall be the amount calculated as follows:

(i)    The Lender shall first determine, as of the Prepayment Date, the amount, if any, by which the Interest Rate exceeds the yield to maturity percentage (the "Current Yield") for the United States Treasury Security (the "Treasury Security") closest in maturity to the Maturity Date as published in *The Wall Street Journal* on the fifth Business Day preceding the Prepayment Date. If publication of (A) *The Wall Street Journal*, or (B) the Current Yield of the United States Treasury Security in *The Wall Street Journal* is discontinued, the Lender, in its sole discretion, shall designate another daily financial or governmental publication of national circulation to be used to determine the Current Yield;

(ii)    The difference calculated pursuant to subsection (c)(i) above shall be multiplied by the outstanding principal balance of this Note as of the Prepayment Date;

(iii)    The product calculated pursuant to subsection (c)(ii) above shall be multiplied by the quotient, rounded to the nearest one-hundredth of one percent, obtained by dividing (A) the number of days from and including the Prepayment Date to and including the Maturity Date, by (B) 365; and

(iv)    The product calculated pursuant to subsection (c)(iii) above shall be discounted at the annual rate of the "Adjusted Current Yield" (where the "Adjusted Current Yield" means the Current Yield adjusted to reflect the difference in timing of semi-annual payments of interest on the United States Treasury Security and monthly payments under this Note) to the present value thereof as of the Prepayment Date, on the assumption that said sum would be received in equal monthly installments on each monthly anniversary of the Prepayment Date prior to the Maturity Date, with the final such installment to be deemed received on the Maturity Date;

provided, however, that the Borrower shall not be entitled in any event to a credit against, or a reduction of, the indebtedness being prepaid if the Current Yield exceeds the Interest Rate or for any other reason.

4

3.6. <u>Loan Fees</u>. In consideration of the Lender's agreement to make the Loan, the Borrower shall pay to the Lender a non-refundable fee in the amount of Twenty-Four Thousand Five Hundred and 00/100 Dollars ($24,500.00), which shall be due and payable in full as a condition precedent to the disbursement of proceeds under this Note.

4. SECURITY. This Note is secured by that certain: (a) Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filing dated as of even date herewith, executed by the Borrower to and for the benefit of the Lender (the "<u>Mortgage</u>"), creating a first mortgage lien on certain real property (the "<u>Premises</u>") legally described in <u>Exhibit "A"</u> attached to the Mortgage; (b) Assignment of Rents and Leases dated as of even date herewith, executed by the Borrower to and for the benefit of the Lender (the "<u>Assignment of Rents</u>"); (c) Guaranty of Payment dated as of even date herewith, executed by Ebro Foods, Inc., an Illinois corporation, RSD Holdings, LLC, an Illinois limited liability company, Zenaida Abreu, individually, Daniel P. Duffy, individually, and Victor H. Reyes, individually (individually and collectively, the "<u>Guarantor</u>") to and for the benefit of the Lender (the "<u>Guaranty</u>"); and (d) Environmental Indemnity Agreement dated of even date herewith, jointly and severally executed by the Borrower and each Guarantor to and for the benefit of the Lender (the "<u>Indemnity Agreement</u>"; the Mortgage, the Assignment of Rents, the Guaranty, the Indemnity Agreement and any and all other document now or hereafter given to evidence or secure payment of this Note or delivered to induce the Lender to disburse the proceeds of the Loan, as such documents may hereafter be amended, restated or replaced from time to time, are hereinafter collectively referred to as the "<u>Loan Documents</u>"). Reference is hereby made to the Loan Documents (which are incorporated herein by reference as fully and with the same effect as if set forth herein at length) for a statement of the covenants and agreements contained therein, a statement of the rights, remedies, and security afforded thereby, and all matters therein contained.

5. EVENTS OF DEFAULT. The occurrence of any one or more of the following events shall constitute an "<u>Event of Default</u>" under this Note:

(a) the failure by the Borrower to pay (i) any installment of principal or interest payable pursuant to this Note within five (5) days after the date when due, or (ii) any other amount payable to the Lender under this Note, the Mortgage or any of the other Loan Documents within five (5) days after the date when any such payment is due in accordance with the terms hereof or thereof; or

(b) the occurrence of any "Event of Default" under the Mortgage or any of the other Loan Documents.

6. REMEDIES. At the election of the holder hereof, and without notice, the principal balance remaining unpaid under this Note, and all unpaid interest accrued thereon and any other amounts due hereunder, shall be and become immediately due and payable in full upon the occurrence of any Event of Default. Failure to exercise this option shall not constitute a waiver of the right to exercise same in the event of any subsequent Event of Default. No holder hereof shall, by any act of omission or commission, be deemed to waive any of its rights, remedies or powers hereunder or otherwise unless such waiver is in writing and signed by the

5

holder hereof, and then only to the extent specifically set forth therein. The rights, remedies and powers of the holder hereof, as provided in this Note, the Mortgage and in all of the other Loan Documents are cumulative and concurrent, and may be pursued singly, successively or together against the Borrower, any Guarantor hereof, the Premises and any other security given at any time to secure the repayment hereof, all at the sole discretion of the holder hereof. If any suit or action is instituted or attorneys are employed to collect this Note or any part hereof, the Borrower promises and agrees to pay all costs of collection, including reasonable attorneys' fees and court costs. If, upon the occurrence of an Event of Default and acceleration of this Note, a tender of payment in the amount necessary to satisfy the Note in full together with all other amounts owed under the Loan Documents is made by the Borrower, its successors or assigns, or by anyone on its or their behalf, or the purchaser at a foreclosure sale, such tender shall constitute an evasion of the prepayment terms hereof and shall be deemed to be a voluntary prepayment hereunder and any such prepayment, to the extent permitted by law, will be subject to the Prepayment Premium described in Section 3.5 hereof. Such Prepayment Premium shall constitute liquidated damages payable to the Lender on account of the Borrower's breach of its agreements hereunder and the Borrower's evasion of the prepayment provisions hereof, it being acknowledged and agreed to by the Borrower that (i) the Lender's actual damages in the event of such breach and evasion will be extremely difficult and impracticable to ascertain, (ii) any such prepayment will result in loss and damage to the Lender through the occurrence of additional administrative expenses, (iii) the foregoing premium is a reasonable estimate of said loss and damage to the Lender, and (iv) the Lender's agreement to make the Loan on the terms contained herein constitutes adequate consideration for the payment of the Prepayment Premium. The Borrower expressly waives the provisions of any present or future statute or law which prohibits or may prohibit the collection of said Prepayment Premium in connection with any such acceleration.

7. <u>COVENANTS AND WAIVERS</u>. The Borrower and all others who now or may at any time become liable for all or any part of the obligations evidenced hereby, expressly agree hereby to be jointly and severally bound, and jointly and severally: (i) waive and renounce any and all homestead, redemption and exemption rights and the benefit of all valuation and appraisement privileges against the indebtedness evidenced by this Note or by any extension or renewal hereof; (ii) waive presentment and demand for payment, notices of nonpayment and of dishonor, protest of dishonor, and notice of protest; (iii) except as expressly provided in the Loan Documents, waive any and all notices in connection with the delivery and acceptance hereof and all other notices in connection with the performance, default, or enforcement of the payment hereof or hereunder; (iv) waive any and all lack of diligence and delays in the enforcement of the payment hereof; (v) agree that the liability of the Borrower and each guarantor, endorser or obligor shall be unconditional and without regard to the liability of any other person or entity for the payment hereof, and shall not in any manner be affected by any indulgence or forbearance granted or consented to by the Lender to any of them with respect hereto; (vi) consent to any and all extensions of time, renewals, waivers, or modifications that may be granted by the Lender with respect to the payment or other provisions hereof, and to the release of any security at any time given for the payment hereof, or any part thereof, with or without substitution, and to the release of any person or entity liable for the payment hereof; (vii) consent to the addition of any and all other makers, endorsers, guarantors, and other obligors for the payment hereof, and to the acceptance of any and all other security for the payment hereof, and agree that the addition of any

6

such makers, endorsers, guarantors or other obligors, or security shall not affect the liability of the Borrower, any guarantor and all others now liable for all or any part of the obligations evidenced hereby; and (viii) shall maintain at all times (but measured annually) a minimum net worth equal to Three Hundred Thirty Two Thousand and 00/100 Dollars ($332,000.00). This provision is a material inducement for the Lender making the Loan to the Borrower.

8. **GENERAL AGREEMENTS.**

    8.1. **Business Purpose Loan.** The Loan is a business loan which comes within the purview of Section 205/4, paragraph (1)(c) of Chapter 815 of the Illinois Compiled Statutes, as amended. The Borrower agrees that the Loan evidenced by this Note is an exempted transaction under the Truth In Lending Act, 15 U.S.C., §1601, et seq.

    8.2. **Time.** Time is of the essence hereof.

    8.3. **Governing Law.** This Note is governed and controlled as to validity, enforcement, interpretation, construction, effect and in all other respects by the statutes, laws and decisions of the State of Illinois, without regard to its conflict of laws provisions.

    8.4. **Amendments.** This Note may not be changed or amended orally but only by an instrument in writing signed by the party against whom enforcement of the change or amendment is sought.

    8.5. **No Joint Venture.** The Lender shall not be construed for any purpose to be a partner, joint venturer, agent or associate of the Borrower or of any lessee, operator, concessionaire or licensee of the Borrower in the conduct of its business, and by the execution of this Note, the Borrower agrees to indemnify, defend, and hold the Lender harmless from and against any and all damages, costs, expenses and liability that may be incurred by the Lender as a result of a claim that the Lender is such partner, joint venturer, agent or associate.

    8.6. **Disbursement.** This Note has been made and delivered at Chicago, Illinois and all funds disbursed to or for the benefit of the Borrower will be disbursed in Chicago, Illinois.

    8.7. **Joint and Several Obligations.** If this Note is executed by more than one party, the obligations and liabilities of each Borrower under this Note shall be joint and several and shall be binding upon and enforceable against each Borrower and their respective successors and assigns. This Note shall inure to the benefit of and may be enforced by the Lender and its successors and assigns.

    8.8. **Severable Loan Provisions.** If any provision of this Note is deemed to be invalid by reason of the operation of law, or by reason of the interpretation placed thereon by any administrative agency or any court, the Borrower and the Lender shall negotiate an equitable adjustment in the provisions of the same in order to effect, to the maximum extent permitted by law, the purpose of this and the validity and enforceability of the remaining provisions, or

portions or applications thereof, shall not be affected thereby and shall remain in full force and effect.

      8.9.    Interest Limitation. If the interest provisions herein or in any of the Loan Documents shall result, at any time during the Loan, in an effective rate of interest which, for any month, exceeds the limit of usury or other laws applicable to the Loan, all sums in excess of those lawfully collectible as interest of the period in question shall, without further agreement or notice between or by any party hereto, be applied upon principal immediately upon receipt of such monies by the Lender, with the same force and effect as though the payer has specifically designated such extra sums to be so applied to principal and the Lender had agreed to accept such extra payment(s) as a premium-free prepayment. Notwithstanding the foregoing, however, the Lender may at any time and from time to time elect by notice in writing to the Borrower to reduce or limit the collection to such sums which, when added to the said first-stated interest, shall not result in any payments toward principal in accordance with the requirements of the preceding sentence. In no event shall any agreed to or actual exaction as consideration for this Loan transcend the limits imposed or provided by the law applicable to this transaction or the makers hereof in the jurisdiction in which the Premises are located for the use or detention of money or for forbearance in seeking its collection.

      8.10.    Assignability. The Lender may at any time assign its rights in this Note and the Loan Documents, or any part thereof and transfer its rights in any or all of the collateral, and the Lender thereafter shall be relieved from all liability with respect to such collateral. In addition, the Lender may at any time sell one or more participations in the Note. The Borrower may not assign its interest in this Note, or any other agreement with the Lender or any portion thereof, either voluntarily or by operation of law, without the prior written consent of the Lender.

      9.    NOTICES. All notices required under this Note will be in writing and will be transmitted in the manner and to the addresses required by the Mortgage, or to such other addresses as the Lender and the Borrower may specify from time to time in writing.

      10.    CONSENT TO JURISDICTION. TO INDUCE THE LENDER TO ACCEPT THIS NOTE, THE BORROWER IRREVOCABLY AGREES THAT, SUBJECT TO THE LENDER'S SOLE AND ABSOLUTE ELECTION, ALL ACTIONS OR PROCEEDINGS IN ANY WAY ARISING OUT OF OR RELATED TO THIS NOTE WILL BE LITIGATED IN COURTS HAVING SITUS IN CHICAGO, ILLINOIS. THE BORROWER HEREBY CONSENTS AND SUBMITS TO THE JURISDICTION OF ANY COURT LOCATED WITHIN CHICAGO, ILLINOIS, WAIVES PERSONAL SERVICE OF PROCESS UPON THE BORROWER, AND AGREES THAT ALL SUCH SERVICE OF PROCESS MAY BE MADE BY REGISTERED MAIL DIRECTED TO THE BORROWER AT THE ADDRESS STATED IN THE MORTGAGE AND SERVICE SO MADE WILL BE DEEMED TO BE COMPLETED UPON ACTUAL RECEIPT.

      11.    WAIVER OF JURY TRIAL. THE BORROWER AND THE LENDER (BY ACCEPTANCE OF THIS NOTE), HAVING BEEN REPRESENTED BY COUNSEL, EACH KNOWINGLY AND VOLUNTARILY WAIVES ANY RIGHT TO A TRIAL BY JURY IN

ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHTS (A) UNDER THIS NOTE OR ANY RELATED AGREEMENT OR UNDER ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT DELIVERED OR WHICH MAY IN THE FUTURE BE DELIVERED IN CONNECTION WITH THIS NOTE OR (B) ARISING FROM ANY BANKING RELATIONSHIP EXISTING IN CONNECTION WITH THIS NOTE, AND AGREES THAT ANY SUCH ACTION OR PROCEEDING WILL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY. THE BORROWER AGREES THAT IT WILL NOT ASSERT ANY CLAIM AGAINST THE LENDER ON ANY THEORY OF LIABILITY FOR SPECIAL, INDIRECT, CONSEQUENTIAL, INCIDENTAL OR PUNITIVE DAMAGES.

12. **WAIVER OF DEFENSES.** OTHER THAN CLAIMS BASED UPON THE FAILURE OF THE LENDER TO ACT IN A COMMERCIALLY REASONABLE MANNER, THE BORROWER WAIVES EVERY PRESENT AND FUTURE DEFENSE (OTHER THAN THE DEFENSE OF PAYMENT IN FULL), CAUSE OF ACTION, COUNTERCLAIM OR SETOFF WHICH THE BORROWER MAY NOW HAVE OR HEREAFTER MAY HAVE TO ANY ACTION BY THE LENDER IN ENFORCING THIS NOTE OR ANY OF THE LOAN DOCUMENTS. THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE LENDER GRANTING ANY FINANCIAL ACCOMMODATION TO THE BORROWER.

13. **Customer Identification - USA Patriot Act Notice: OFAC and Bank Secrecy Act.** The Lender hereby notifies the Borrower that pursuant to the requirements of the USA Patriot Act (Title III of Pub. L. 107-56, signed into law October 26, 2001) (the "Act"), and the Lender's policies and practices, the Lender is required to obtain, verify and record certain information and documentation that identifies the Borrower, which information includes the name and address of the Borrower and such other information that will allow the Lender to identify the Borrower in accordance with the Act. In addition, the Borrower shall (a) ensure that no person who owns a controlling interest in or otherwise controls the Borrower or any subsidiary of the Borrower is or shall be listed on the Specially Designated Nationals and Blocked Person List or other similar lists maintained by the Office of Foreign Assets Control ("OFAC"), the Department of the Treasury or included in any Executive Orders, (b) not use or permit the use of the proceeds of the Loan to violate any of the foreign asset control regulations of OFAC or any enabling statute or Executive Order relating thereto, and (c) comply, and cause any of its subsidiaries to comply, with all applicable Bank Secrecy Act ("BSA") laws and regulations, as amended.

14. **EXPENSES AND INDEMNIFICATION.** The Borrower shall pay all costs and expenses incurred by the Lender in connection with the preparation of this Note and the Loan Documents, including, without limitation, reasonable attorneys' fees and time charges of attorneys who may be employees of the Lender or any affiliate or parent of the Lender. The Borrower shall pay any and all stamp and other taxes, UCC search fees, filing fees and other costs and expenses in connection with the execution and delivery of this Note and the other instruments and documents to be delivered hereunder, and agrees to save the Lender harmless from and against any and all liabilities with respect to or resulting from any delay in paying or omission to pay such costs and expenses. The Borrower hereby authorizes the Bank to charge any account of the Borrower with the Bank for all sums due under this section. The Borrower also agrees to defend (with counsel satisfactory to the Lender), protect, indemnify and hold

9

harmless the Lender, any parent corporation, affiliated corporation or subsidiary of the Lender, and each of their respective officers, directors, employees, attorneys and agents (each an "Indemnified Party") from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, claims, costs, expenses and distributions of any kind or nature (including, without limitation, the disbursements and the reasonable fees of counsel for each Indemnified Party thereto, which shall also include, without limitation, attorneys' fees and time charges of attorneys who may be employees of the Lender, any parent corporation or affiliated corporation of the Lender), which may be imposed on, incurred by, or asserted against, any Indemnified Party (whether direct, indirect or consequential and whether based on any federal, state or local laws or regulations, including, without limitation, securities, environmental laws and commercial laws and regulations, under common law or in equity, or based on contract or otherwise) in any manner relating to or arising out of this Note or any of the Loan Documents, or any act, event or transaction related or attendant thereto, the preparation, execution and delivery of this Note and the Loan Documents, the making or issuance and management of the Loan, the use or intended use of the proceeds of this Note and the enforcement of the Lender's rights and remedies under this Note, the Loan Documents any other instruments and documents delivered hereunder, or under any other agreement between the Borrower and the Lender; provided, however, that the Borrower shall not have any obligations hereunder to any Indemnified Party with respect to matters caused by or resulting from the willful misconduct or gross negligence of such Indemnified Party. To the extent that the undertaking to indemnify set forth in the preceding sentence may be unenforceable because it violates any law or public policy, the Borrower shall satisfy such undertaking to the maximum extent permitted by applicable law. Any liability, obligation, loss, damage, penalty, cost or expense covered by this indemnity shall be paid to each Indemnified Party on demand, and failing prompt payment, together with interest thereon at the Default Rate from the date incurred by each Indemnified Party until paid by the Borrower, shall be added to the obligations of the Borrower evidenced by this Note and secured by the collateral securing this Note. The provisions of this section shall survive the satisfaction and payment of this Note.

IN WITNESS WHEREOF, the Borrower has executed and delivered this Promissory Note as of the day and year first above written.

EBRO REAL ESTATE HOLDINGS LLC,
an Illinois limited liability company

By: _____
_____, Manager

(125924706)