1

1            IN THE UNITED STATES BANKRUPTCY COURT
          FOR THE NORTHERN DISTRICT OF DIVISION
2                      EASTERN DIVISION

3

4   EBRO FOODS, INCORPORATED,     ) No. 09B10101
    EBRO REAL ESTATE HOLDINGS, LLC)    09B10104
5                                 )
                                  ) Chicago, Illinois
6                                 ) November 18, 2009
                                  ) 10:00 a.m.
7                   Debtors.      )

8

9        TRANSCRIPT OF PROCEEDINGS BEFORE THE
              HONORABLE EUGENE R. WEDOFF
10

11  APPEARANCES:

12

    MR. FORREST INGRAM,
13  on behalf of EBRO Foods, Incorporated;

14

    MS. MIRIAM STEIN,
15  on behalf of the Water Reclamation District;

16

    MR. ROBERT NACHMAN,
17  on behalf of Bank of America;,

18

    MR. MICHAEL KEATON,
19  on behalf of PACA Creditor Harvest Food Group;

20

    MS. KATIE GLEASON,
21  on behalf of the United States Trustee.

22

23

24

25

1            THE CLERK:  EBRO Foods, Incorporated, and
2    EBRO Real Estate Holdings, 09-10101, and 09B10104.
3            MR. INGRAM:  Good morning, Your Honor.
4    Forrest Ingram on behalf of the debtors.
5            MS. STEIN:  Good morning.  Miriam Stein
6    on behalf of the Water Reclamation District.
7            MR. NACHMAN:  Good morning.  Robert
8    Nachman, Bank of America, Your Honor.
9            MR. KEATON:  Good morning, Your Honor.
10   Mike Keaton on behalf of PACA creditor Harvest Food
11   Group.
12           MS. GLEASON:  Katie Gleason on behalf of
13   the United States Trustee.
14           THE COURT:  All right.  Let's take these
15   matters in the order that they appear on the call.
16   Harvest Food, I was told there was going to be a
17   settlement?
18           MR. INGRAM:  Yes, Your Honor.  The
19   settlement -- we've now exchanged settlement
20   documents.  There has also been, as part of that, an
21   adversary filed with the potential consent agreement
22   that would be giving Harvest Foods a valid PACA
23   Trust claim.  There are some discussions still
24   concerning the total amount of the claim, and we
25   have that to work out.

1                    As to the other two, Mr. Keaton
2    yesterday -- he had filed the adversary I guess the
3    same day or the day before and so we're still in
4    discussions on that and I would like to have that
5    continued.
6              MR. KEATON:  I have a problem with that,
7    Your Honor.  As you recall, we were up on the call
8    two weeks ago for that very purpose, continue for
9    settlement.  Now I know that it didn't pop up on one
10   of your calls without having the case move one inch
11   from status to status, so as of yesterday afternoon
12   we had to file our adversary.  Because if you recall
13   the last time we were here we said we can either do
14   this, you know, the cheap and fast way because of
15   the fee shifting provision, or we can do this, you
16   know, kind of the proper motion fees way and do the
17   whole adversary and stick the debtor with all the
18   fees.
19                    As of yesterday afternoon at 4:00
20   o'clock we hadn't heard anything, not a peep from
21   the debtor, so we had to file the adversary.  We did
22   that.  We started the adversary.  I was checking in
23   with my office this morning, and as of this morning
24   at approximately 8:00 o'clock last night we got an
25   offer that was completely unacceptable.  I don't

1 need to burden the court with that, but the bottom
2 line is it's not even close.
3 　　　　　So what I would suggest is we do one
4 of two things: Either grant the motion the quick
5 and dirty way, grant the motion, direct the debtor
6 to pay. My client is still willing to take the
7 payments over time. That's not the problem. The
8 problem is there is no movement. So we can either
9 grant the motion and force the debtor to address the
10 claim one way or another. Pay us in full, in which
11 case the judgment is not a problem. The loss of
12 trust rights under Crown v. Patterson is not a
13 problem if they can pay us in full. If they cannot
14 pay us in full, then we need the consent judgment
15 route to lock in the trust status of the claim and
16 allow payments over time on the judgment, not the
17 claim.
18 　　　　THE COURT: Well, from what I've heard
19 from Mr. Ingram this morning, you're not going to
20 get an agreed judgment on your motion. Is that
21 right?
22 　　　　MR. INGRAM: Your Honor, not on this
23 particular motion. What I understood was that the
24 PACA Trust required, in order to preserve the PACA
25 Trust rights, a judgment. And we had talked about

1   that before.  And the question was whether or not,
2   based upon a motion to compel, an order approving
3   the motion to compel would be tantamount to a
4   judgment that would satisfy the PACA Trust
5   requirement.
6              THE COURT:  You know, anything that's
7   required to be done by adversary proceeding in
8   bankruptcy can be done by motion with consent of the
9   parties.  The Seventh Circuit has made that very
10  clear.  So there would be no problem in my treating
11  this motion as an adversary proceeding and entering
12  a judgment order if that was consented to by the
13  debtor.  If the debtor doesn't consent, then as
14  Mr. Keaton says, we have to go through the route of
15  an adversary proceeding so that you can get
16  something that's formally a judgment order.
17             MR. INGRAM:  Your Honor, what we consent
18  to, we consent to the 11,000, which was the original
19  amount that was charged for the produce.  We consent
20  to the interest that arose on it.  We had a question
21  concerning the attorney's fees.  We thought that
22  they were excessive.  We wanted to negotiate with
23  them concerning the attorney's fees.  That's where
24  we were.  It was just, you know, that far away from
25  my saying, "I agree to this agreement."

1              THE COURT:  I don't want to get into a
2     discussion of your settlement.  That's not my role
3     here.  If you wanted to have a settlement conference
4     with a judge, I would appoint another judge.
5              MR. INGRAM:  Sure.
6              THE COURT:  Because I don't want to be
7     influenced by the discussions of the settlement if I
8     have to make a finding of fact.  But whatever the
9     reason is for your unwillingness to agree to -- that
10    the plaintiff would like, we are going to have to go
11    ahead with the adversary proceeding.
12             MR. INGRAM:  What I would suggest, Your
13    Honor, is that you pass this motion for a short
14    while, give us an opportunity to talk in the
15    corridor, and come back and --
16             THE COURT:  If you're willing to do that,
17    Mr. Keaton, I'll pass this and let you talk.
18             MR. KEATON:  I'm always willing to talk,
19    Your Honor.  But what I would suggest is that we at
20    least bifurcate the issue, perhaps like a Rule 56
21    standard.  He just consented to principal and
22    interest.  The fees are the only issue left.  If we
23    can just isolate that and kind of address what we
24    can address and leave what we leave for later.  But
25    he's just consented to --

1          MR. INGRAM:  That would be fine with me,
2    Your Honor.  We can enter an order --
3          THE COURT:  Well, look, give me a general
4    order on the motion, then, this partial judgment for
5    the amount of the principal of the claim and
6    interest and we'll leave open the question of the
7    attorney's fees to be resolved under this motion and
8    we'll have the adversary proceeding dismissed as
9    unnecessary.
10         MR. KEATON:  That would be ideal, Your
11   Honor.
12         THE COURT:  All right.
13         MR. INGRAM:  That would be fine.
14         THE COURT:  So you can draw up that order
15   and get it to me by Wednesday of next week at 9:30.
16   Okay.  So this is draft order to follow, November 25
17   at 9:30.
18         THE CLERK:  Could we continue it, as
19   well, for the attorney's fees?
20         THE COURT:  Yes.  It will be on the call
21   as well.  So it's draft order to follow, but it will
22   be at the 10:00 o'clock call on the 25th.
23         MR. KEATON:  Can I include in that order
24   a date by which the debtor must make payments on at
25   least the principal and interest portion of the

```
 1   claim?
 2              THE COURT:  Well, you're going to be
 3   discussing the terms of the order.  So, yes, you
 4   certainly can.  And if you don't reach agreement on
 5   this order, talk to me on the 25th at 10:00 o'clock.
 6              MR. KEATON:  I will, Your Honor.
 7              THE COURT:  Okay.  Now, the next motion
 8   is debtor's motion to amend an order.  My practice
 9   is not to order payment of interim fees.  I simply
10   allow the interim fees.  And the reason for that is
11   that the payment of any administrative claim is
12   going to be discretionary with the debtor.  If the
13   debtor believes that there's plenty of funds
14   available to satisfy the administrative claims of
15   the Chapter 11 case, the debtor-in-possession is
16   free to make the determination to pay the claim.
17   But if the debtor-in-possession is concerned about
18   the administrative insolvency of the case, the
19   debtor may choose not to do that.  It's the debtor,
20   debtor-in-possession's choice, not my order that
21   ought to be controlling here.
22              MR. INGRAM:  Very good, Your Honor.  I
23   was under the misunderstanding that you were doing
24   it based upon the fact that there was a PACA claim
25   on both of them.  So if that's not the problem,
```

```
 1   then --
 2             THE COURT:  I routinely strike directions
 3   to make payments when I award interim fees.
 4             MR. NACHMAN:  For the record, Your Honor,
 5   there is no authority to use cash collateral in the
 6   real estate case, and everything that could be used
 7   to pay the fees would be Bank of America's cash
 8   collateral.
 9             THE COURT:  That is better addressed to
10   the debtor-in-possession than to me, but you made
11   your point.  And it pretty much backs up what I'm
12   saying, the question of whether there are funds
13   available to make a payment of interim fees is a
14   question that I'm not addressing when I allow the
15   fees.
16                  Okay.  Next we have the trustee's
17   motion to convert or dismiss.
18             MS. GLEASON:  Yes, Your Honor.  We filed
19   a motion to convert or dismiss.  It got sent out on
20   notice to all creditors.  There has been two
21   responses, one from the bank indicating that they
22   support the motion but are requesting conversion and
23   believe that there are issues and assets here for a
24   Chapter 7 trustee to review.
25                  The debtor filed also a motion.
```

10

1  First off, they're requesting a continuance because
2  they're saying that they are negotiating with the
3  bank as to a possible resolution of the property.
4  It's my understanding from Mr. Nachman that he is
5  not in support of a continuance.  Then the debtor
6  does not dispute whether or not there are grounds to
7  convert or dismiss.  It then says if it's going to
8  happen, there should be dismissal.  They don't see
9  any reason for the case to convert.  Obviously, it's
10 an issue of what's in the best interest of
11 creditors.
12             I will say, Your Honor, my initial
13 impression was that I didn't know what a Chapter 7
14 trustee would do.  But then just yesterday the
15 debtor had filed -- request to file amended
16 adversary complaint against the bank.  And I don't
17 know, then, if this isn't something that a trustee
18 could take a look at, an independent trustee, and
19 see if there's any grounds here to pursue it and go
20 forward.
21             THE COURT:  Well, in a sense since I
22 haven't seen this complaint and you have, you would
23 be in a better position to make that determination.
24 If it's your belief, having reviewed the complaint,
25 that there is a potential cause of action against

1   the bank here that ought to be reviewed by a trustee
2   and if that would be in the best interest of the
3   estate, the only person who will lose out by virtue
4   of there not being any real asset here would be the
5   trustee who has to spend the time to review the
6   matter.
7           MS. GLEASON:  Right, and I guess I just
8   don't have enough basis here.  Obviously the debtor
9   believes that there are grounds.  I really can't
10  tell you, Your Honor.
11          THE COURT:  Okay.  Let me tell you,
12  Mr. Ingram, I think I have to grant the motion.  I
13  have made a determination that the debtor has
14  effectively no right to possession here, and this is
15  a case where a right to possession is the basis for
16  the reorganization.  So dismissing or converting the
17  case is entirely appropriate.  If there is some
18  right to financial recovery, monetary recovery from
19  the lending bank due to some misconduct that the
20  bank engaged in, that would be available as an asset
21  of the estate, but it would not be a reorganization.
22              So I will take the suggestion that
23  Ms. Gleason has made.  I will convert the case to
24  Chapter 7.  If there is some merit to the complaint
25  that you drafted, it can be adopted by a Chapter 7

12

1  trustee and prosecuted.  If the Chapter 7 trustee
2  comes to the conclusion that this is not worth
3  doing, I'm sure that I'll hear about that and we'll
4  wind up with a dismissal in the long term.  At least
5  it will have the advantage of a second set of eyes
6  peering over the complaint that you drafted.
7              MR. INGRAM:  Your Honor, the one thing
8  that I just wanted to mention is that my clients
9  have been in contact with the vice-president of the
10 bank and they were telling me that the bank was not
11 opposed to our continuing with the discussions.
12             THE COURT:  If your client is able to
13 negotiate a new lease agreement with the bank and is
14 able to persuade the trustee that that's something
15 that's worth doing, the case can be reconverted.
16             MR. INGRAM:  Okay.
17             MS. GLEASON:  And, Your Honor, I
18 apologize.  I realize that I hadn't brought an
19 order, if I can submit a draft order.
20             THE COURT:  Draft order to follow by
21 Wednesday of next week at 9:30.
22             MS. GLEASON:  Thank you.
23             MR. INGRAM:  I take it that we don't need
24 a status hearing.
25             THE COURT:  No.  There will be no status.

1           MS. GLEASON:  You just want a
2  straight-forward conversion.
3           THE COURT:  Yes, exactly.
4           MS. GLEASON:  We'll take care of it, Your
5  Honor.
6           MR. INGRAM:  Thank you, Your Honor.
7           MR. KEATON:  Thank you, Your Honor.
8                     (Which were all the proceedings
                       had in the above-entitled cause,
9                      November 18, 2009.)
10
11 I, BARBARA A. CASEY, DO HEREBY CERTIFY THAT THE
   FOREGOING IS A TRUE AND ACCURATE TRANSCRIPT OF
12 PROCEEDINGS HAD IN THE ABOVE-ENTITLED CAUSE.
13
14
15
16
17
18
19
20
21
22
23
24
25