**UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| EBRO FOODS, INC. | ) Case No. 09-10101 |
| | ) |
| Debtor and Debtor in Possession. | ) Hon. Eugene R. Wedoff |

**MEMORANDUM OF LAW IN SUPPORT OF PACA TRUST BENEFICIARY
HARVEST FOOD GROUP, INC.'S LIMITED OBJECTION TO THE
FEE APPLICATION OF CLIFTON GUNDERSON, LLP**

Harvest Food Group, Inc. (the "Claimant"), by and through its undersigned counsel, files its Memorandum in Support of its Limited Objection to the First Fee Application of Clifton Gunderson, LLP. (the "Applicant").

## I. INTRODUCTION

Claimant holds a claim against Ebro Foods, Inc. ("Debtor") qualified as a trust claim under the Perishable Agricultural Commodities Act, 1930, 7 U.S.C. §§ 499a-499t, as amended (2007 & Supp. 2009) (the "PACA"). The PACA requires the Debtor to satisfy Claimant's PACA claim before the claims of other creditors, including administrative expenses, because all assets in this case are impressed with the PACA trust and are excluded from property of the estate under § 541(d).

## II. FACTS

Claimant supplied Debtor with perishable agricultural commodities ("Produce"), on credit, for the Debtor to re-sell. However, Debtor never paid Claimant for said Produce. With each load of Produce, Claimant issued invoices for the Produce to the Debtor. Each such invoice included the required statutory language for preserving PACA trust rights in accordance with 7 U.S.C. § 499e(c)(3). Furthermore, Claimant held a valid PACA license at all times relevant to the Claimant's

1

claim under PACA, thereby allowing Claimant to preserve its trust rights in this way.

On March 24, 2009, Debtor filed for Chapter 11 protection. On January 6, 2010, the Applicant filed its First Application for Interim Compensation for Professional Services and for Reimbursement of Expenses. (D.E. #138).

All of the Debtor's assets which were acquired in whole or in part from the proceeds of Produce, such as the assets which Debtor now seeks to use to pay Applicant's fees, are part of the *res* of the PACA statutory trust. These assets must be held in trust for the benefit of trust beneficiaries such as Claimant. 7 U.S.C. § 499e(c). As a result, these assets comprise the statutory trust *res*, and are not to be considered "property of the estate" under Section 541(d) from which the Debtor can satisfy its administrative expenses.

### III. HISTORY OF THE PACA TRUST

Congress enacted the PACA in 1930 to provide a comprehensive scheme for the regulation of traders of Produce. "It provides a code of fair play . . . an aid to agricultural traders in enforcing their contracts." 49 Fed. Reg. at 45737 (1984). The PACA requires produce buyers to make "full payment promptly" for any Produce they purchase. 7 U.S.C. § 499b(4). The PACA protects suppliers of Produce by giving rise to civil liabilities in favor of the unpaid seller against buyers who fail to make full payment promptly. 7 U.S.C. § 499e(a); *In re: Carpenito Bros.*, 46 Agric. Dec. 486 (1987), *aff'd* 851 F.2d 1500 (D.C. App. 1988). *See also Endico Potatoes v. CIT/Factoring*, 67 F.3d 1063, 1066-67 (2nd Cir. 1995). Since its enactment in 1930, the PACA has always been concerned with the problem of non-payment for shipments of Produce. *See* 7 U.S.C. § 499e(c)(1).

In 1984, Congress determined that the increase in nonpayment and delinquent payment by Produce buyers threatened the financial stability of the produce industry. Congress recognized that

under the prevailing law "...sellers of fresh fruits and vegetables [were] unsecured creditors and receive[d] little protection in any suit for recovery of damages where a buyer ha[d] failed to make payment required by the contract." H. R. Rep. No. 543, 98th Cong. 1 St. Sess. 3 (1983), reprinted in 1984 *U.S. Code Cong. & Admin. News*, 405, 407.  In response, Congress amended the PACA in 1984 to provide further protection to sellers of produce and to establish an express, non-segregated "floating" statutory trust[1] in which a Produce buyer as trustee holds its Produce-related assets in trust as a fiduciary until full payment is made to the unpaid seller/trust beneficiary.  7 U.S.C. § 499e(c); *Frio Ice S.A. v. Sunfruit,* 918 F.2d 154, 156 (11th Cir. 1990).  The key provision is the following:

> [p]erishable agricultural commodities received by a commission merchant, dealer, (sic) or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, <u>shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities</u> or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents.

7 U.S.C. § 499e(c)(2) (emphasis added).

## IV. ARGUMENT

The statutory trust provisions found in the PACA imposes several restrictions and limitations on the normal operation of the Bankruptcy Code and its scheme for marshaling a debtor's assets. The presence of PACA claims in this case raises two distinct issues.  First, the nature and scope of the PACA trust rights and, second, the effect of this statutory trust on the ability of approving

---

[1] The Second Circuit provided an excellent discussion of the history and purpose of the PACA trust amendments in *Endico Potatoes v. CIT/Factoring*, 67 F.3d 1063, 1067 (2nd Cir. 1995).

3

compensation for professional services from the estate's assets.

### A. SCOPE OF THE PACA TRUST

The PACA trust provisions state all fresh or frozen Produce, as well as "all inventories of food or other products derived from [Produce], and <u>any receivables or proceeds</u> from the sale of such commodities or products, <u>shall be held by [the Produce Debtor] in trust</u> for the benefit of all unpaid suppliers or sellers of such commodities... <u>until full payment</u> of the sums owing in connection with such transactions <u>has been received by such unpaid suppliers</u>, seller, or agents." 7 U.S.C. § 499e(c)(2) (emphasis added).

The PACA trust commences by operation of law upon delivery of the Produce and continues until full payment for the Produce has been made. 7 C.F.R. § 46.46(d)(1); 7 U.S.C. § 499e(c)(2). Once the seller delivers the Produce, failure of the buyer (as trustee) to maintain trust assets sufficient to make full payment promptly to the trust beneficiaries is unlawful. 7 U.S.C. § 499b(4). The trust provisions of the PACA are similar to, and based upon, the trust provisions of the Packers and Stockyards Act, 7 U.S.C. §§ 181-229 (1980) (the "PSA"). The trust provisions of both Acts are interpreted similarly, and the courts have looked to the PSA for guidance in interpreting the PACA. *See In re: Fresh Approach*, 48 B.R. 926, 931 (Bankr. N.D. Tex. 1985).

"For produce sellers, a principal benefit of the trust is that they are placed first in line among creditors for all produce-related assets if the produce dealer declares bankruptcy." *Frio Ice*, 918 F.2d at 156. *See In re: Monterey House,* 71 B.R. 244, 249 (Bankr. S.D. Tex. 1986); *In re: Fresh Approach*, 51 B.R. 412, 420-422 (Bankr. N.D. Tex. 1985). The PACA trust *res* serves as a fund from which unpaid Produce sellers can be assured payment. By operation of trust law, while a buyer of Produce has legal title to the PACA trust *res*, equitable title remains with the seller of the Produce.

The establishment of the trust occurs upon the commencement of the buyer's buying and selling of Produce and exists continuously throughout the life of the buyer's business until the sellers are paid in full. Any assets purchased while the trust is in existence will be assumed to be purchased with trust assets and will, therefore, become part of the trust fund assets available to satisfy the claims of the qualified unpaid sellers. *Atlantic Tropical Market,* 118 B.R. 139, 142 (Bankr. S.D. Fla. 1990). When trust assets are commingled with funds not subject to the trust, the trust is impressed upon the entire commingled fund for the benefit of the trust beneficiaries. *In re: Gotham Provision*, 669 F.2d 1000, 1011 (5th Cir. 1982). The PACA was designed to insure that a Produce buyer's secured lender and other third parties do not receive and retain proceeds from the sale of Produce when the buyers's Produce suppliers have not been paid. The USDA has recognized that Congress intended unpaid sellers to recover trust assets that are transferred to third parties. 49 Fed. Reg. 45736 (Nov. 20, 1984). The Produce buyer is required to maintain trust assets so that such assets are freely available to satisfy all outstanding obligations to sellers of produce. *See* 7 C.F.R. § 46.46(d).

B. <u>PACA SHIFTS THE BURDEN OF TRACING TO THE DEBTOR</u>

There is no requirement for PACA trust beneficiaries to trace such trust assets. The House Report which accompanied the legislation stated "[t]he trust impressed by section 5(c)(2) is a nonsegregated "floating trust" made up of all a firm's commodity related liquid assets, under which there may be commingling of trust assets. Under this provision <u>there is no necessity to specifically identify all of the trust assets through each step of the accrual and disposal process.</u>" (emphasis added) H.R. Rep. 98-543, at 5, 1984 U.S. Code Cong. & Admin. News 407, 409. "Since commingling is contemplated, all trust assets would be subject to the claims of unpaid suppliers... to the extent of the amount owed to them." *Atlantic Tropical Market*, 118 B.R. at 142 *citing,* H.R.

5

Rep. 98-543, at 5, 1984 U.S. Code Cong. & Admin. News 407; *In re Richmond Produce*, 112 B.R. 364, 368 (N.D. Cal. 1990) ("[t]he unpaid sellers are not required to trace and the trust arises immediately upon delivery."); *Strube Celery & Vegetable Co. v. Zois (In re Zois)*, 201 B.R. 501, 509 (Bankr. N.D. Ill. 1996).

The *Atlantic Tropical Market* court considered this legislative history when it correctly found the only role tracing plays in a PACA situation is where the debtor-purchaser has superior knowledge of the origin of the funds used to acquire each of its assets. *Atlantic Tropical Market*, 118 B.R. at 142. Due to it having such superior knowledge, Congress placed on the Produce Debtor the burden to "track the status of the trust fund and to provide evidence of other origin of purchases of assets." *Id.*; *Fresh Approach*, 51 B.R. at 422; ("[s]hould a dispute arise, it will be the Debtor's burden to establish which, if any, assets are not subject to the PACA trust."); *In re N. Merberg & Sons*, 166 B.R. 567, 570 (Bankr. S.D.N.Y. 1994); *See Six L's Packing v. West Des Moines State Bank,* 967 F.2d 256, 258 (8th Cir. 1992).

The court in *Sanzone-Palmisano Co. v. Seaman Enterprises*, 986 F.2d 1010 (6th Cir. 1993) provides a more detailed discussion on the issue of tracing and the policy reasons for placing the burden on the debtor-purchaser. *Id.* at 1013. While the Court recognized "...that in most cases it will be virtually impossible for a PACA debtor to trace the origin of the disputed assets... [w]e believe that this is the outcome that Congress intended." *Id.* at 1014. *See Strube Celery* 201 B.R. at 509. After finding the supplier had established the validity of its PACA trust interest, the *Sanzone-Palmisano Co.* Court stated the burden on remand to the district court will be on the debtor to prove which seized assets were not purchased with funds from the sale of produce. "All of the seized assets that cannot be traced [by the debtor] to a non-trust source are part of the trust *res* and are subject to [supplier's] trust claim." *Sanzone-Palmisano Co.*, 986 F.2d at 1014. Accordingly, all of

6

the Debtor's assets are to be considered PACA trust assets unless and until the Debtor can prove such assets were not acquired with the proceeds of the Debtor's transactions in Produce.

### C. <u>PACA TRUST ASSETS ARE NOT PROPERTY OF THE ESTATE</u>

Any PACA trust claim is entitled to a level of priority which takes it outside of the normal marshaling scheme under Title 11 due to the fact the corpus of the PACA trust has been expressly removed from the scope of property of the estate under § 541 which the Debtor may use or otherwise administer. Courts having faced similar issues are unanimous in finding the corpus of an express trust created under the provisions of the PACA is not property of the estate within the scope of § 541 of the Bankruptcy Code. 11 U.S.C. § 541(d). *See In re Super Spud*, 77 B.R. 930, 931 (Bankr. M.D. Fla. 1987) *citing, Fresh Approach*, 51 B.R. at 419; *See also In re Kornblum & Co., Inc.*, 81 F.3d 280 (2nd Cir., 1996) ("...in the event of the Produce Debtor's bankruptcy, the Bankruptcy Code excludes the PACA trust assets from the bankruptcy estate."); *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n.10 (1983) (the Bankruptcy Code "plainly exclude[s from the bankruptcy estate] property of others held by the debtor in trust at the time of the filing of the [bankruptcy] petition.")

The issue of such assets being beyond the estate's reach has been consistently resolved in favor the PACA trust beneficiaries every time the issue has been considered. *In re Morabito Bros., Inc.*, 188 B.R. 114 (Bankr. W.D.N.Y. 1995); *In re United Fruit and Produce Co., Inc.*, 119 B.R. 10 (Bankr. D.Conn. 1990); <u>In re Asinelli, Inc.,</u> 93 B.R. 433 (M.D.N.C. 1988); *In re United Fruit & Produce Co., Inc.*, 86 B.R. 14 (Bankr. D.Conn. 1988); *In re Super Spud, Inc.*, 77 B.R. 930 (Bankr. M.D.Fla. 1987); *In re W.L. Bradley Co., Inc.*, 75 B.R. 505 (Bankr. E.D.Pa. 1987); *In re Monterey House, Inc.*, 71 B.R. 244 (Bankr. S.D.Tex. 1986); *In re Fresh Approach, Inc.*, 51 B.R. 412 (Bankr. N.D.Tex. 1985).

### D. DEBTOR CANNOT USE NON-ESTATE PROPERTY TO SATISFY ITS <u>ADMINISTRATIVE EXPENSES</u>

The First Application for Interim Compensation for Professional Services and for

Reimbursement of Expenses of Clifton Gunderson, LLP (D.E. #138) requests compensation pursuant to Fed. R. Bankr. P. 2016, which provides for "...seeking interim or final compensation for services, or reimbursement of necessary expenses from the estate..." Fed. R. Bankr. P. 2016(a). As cited above, PACA trust assets are not property of the estate. *See supra.* Thus, by definition, neither Debtor, nor any provider of professional services, can use any portion of the PACA trust assets for compensation, because such assets are simply not property of the estate. Accordingly, the Debtor's proposed use of PACA trust assets for the payment of a Debtor's accountant would be an illegal dissipation of the PACA trust. *See e.g., C.H. Robinson v. Alanco*, 239 F.3d 483 (2nd Cir. 2001).

### IV. **CONCLUSION**

Claimant has a perfected PACA trust claim against Debtor. As a result, Debtor may not use any assets in its possession for the payment of its accountant's fees, or for any other distribution or payment, as these trust assets are not within the scope of "property of the estate." Therefore, Claimants requests this Honorable Court enter an order allowing the Applicant's claim, but denying payment of that claim until the Debtor has fully satisfied the PACA Claimant's valid trust claim.

Date:  January 26, 2010                             Respectfully submitted,

                                                    HARVEST FOOD GROUP, INC.

                                                    By: /s/ Mark A. Bulgarelli, Esq.
                                                        One of Its Attorneys

                                                    Michael J. Keaton, Esq.
                                                    Mark A. Bulgarelli, Esq.
                                                    KEATON & ASSOCIATES, P.C.
                                                    1278 W. Northwest Hwy., Suite 903
                                                    Palatine, Illinois 60067
                                                    Tel: 847/934-6500
                                                    keaton@pacatrust.com

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that a copy of the foregoing was served electronically to all parties on the above-captioned matter through the ECF system at the electronic address on file with the Clerk's Office or by depositing same in the U.S. Mail, postage pre-paid and properly addressed on this day, January 26, 2010.

By: /s/ Mark A. Bulgarelli, Esq.