**1330 West 43rd, LLC**
**STANDARD FORM**
**BUILDING LEASE**
**(Multi-Tenant)**

    **1.**    **BASIC TERMS**.  This **Section 1** contains the Basic Terms of this Lease between Landlord and Tenant, named below.  Other Sections of the Lease referred to in this **Section 1** explain and define the Basic Terms and are to be read in conjunction with the Basic Terms.

    **1.1.**    **Effective Date of Lease**: March 1, 2010

    **1.2.**    **Landlord**:  Ebro Real Estate Holdings, LLC

    **1.3.**    **Tenant**:  Ebro Foods, Inc.

    **1.4.**    **Premises**:  Approximately 76,163 rentable square feet in the property commonly known as 1330 West 43rd Street, Chicago, Illinois (the "**Building**").

    **1.5.**    **Property**:  See **Exhibit A**.

    **1.6.**    **Lease Term**:  Five (5) years ("**Term**"), commencing March 1, 2010 ("**Commencement Date**") and endingFebruary 28, 2011 ("**Expiration Date**").

    **1.7.**    **Permitted Uses**:  (See **Section 3**)  Warehousing and Distribution and other related business uses.

    **1.8.**    **Brokers**: None

    **1.9.**    **Security Deposit**: None

    **1.10.**    **Base Rent Payable by Tenant**:

| Period | Monthly | Annual |
|---|---|---|
| March 1, 2010 - February 28, 2011 | $16,500 | $198.000 |
| March 1, 2011 - February 29, 2012 | $16,995 | $203,940 |
| March 1, 2012 - February 28, 2013 | $17,505. | $210,060 |
| March 1, 2013 - February 28, 2014 | $18,030 | $216,360 |
| March 1, 2014 - February 28, 2015 | $18,571 | $222,852 |

    **1.11.**    **Initial Estimated Additional Rent Payable by Tenant**:  None

    **1.12.**    **Tenant's Proportionate Share**: None

    **1.13.**    **Riders to Lease**:  The following riders are attached to and made a part of this Lease. None.

## 2.    LEASE OF PREMISES; RENT.

2.1.    **Lease of Premises for Lease Term**.  Landlord hereby leases the Premises to Tenant, and Tenant hereby rents the Premises from Landlord, for the Term and subject to the conditions of this Lease.

2.2.    **Types of Rental Payments**.  Tenant shall pay rents of (a) gross base rent payable in monthly installments as set forth in **Section 1.10** hereof, in advance, on the first day of each and every calendar month during the Term of this Lease (the "**Base Rent**"); and (b) any other amounts owed by Tenant hereunder (collectively, "**Additional Rent**"); (c) interest on late payments of Rent at the rates set forth in **Section 22.3** and (d) in the event any monthly installment of Base Rent or Additional Rent, or both, is not paid within 10 days of the date when due, a late charge in an amount equal to 7% of the then delinquent installment of Base Rent and/or Additional Rent (the "**Late Charge**"; the Late Charge, Base Rent, Additional Rent and interest thereon shall collectively be referred to as "**Rent**"), will become payable to Ebro Real Estate Holdings, LLC" (or such other entity designated as Landlord's management agent, if any, and if Landlord so appoints such a management agent, the "**Agent**"), or pursuant to such other directions as Landlord shall designate in this Lease or otherwise in writing.

2.3.    **Covenants Concerning Rental Payments**.  Tenant shall pay the Rent promptly when due, without notice or demand, and without any abatement, deduction or setoff, except as may otherwise be expressly and specifically provided in this Lease.  No payment by Tenant, or receipt or acceptance by Agent or Landlord, of a lesser amount than the correct Rent shall be deemed to be other than a payment on account, nor shall any endorsement or statement on any check or letter accompanying any payment be deemed an accord or satisfaction, and Agent or Landlord may accept such payment without prejudice to its right to recover the balance due or to pursue any other remedy available to Landlord.  If the Commencement Date occurs on a day other than the first day of a calendar month, the Rent due for the first calendar month of the Term shall be prorated on a per diem basis and paid to Landlord on the Commencement Date, and the Term will be extended to terminate on the last day of the calendar month in which the Expiration Date stated in **Section 1.6** occurs.  Except as may otherwise be expressly and specifically provided in this Lease, Tenant's obligation to pay Rent is independent of each and every covenant contained in this Lease.

## 3.    OPERATING EXPENSES.  Tenant shall be responsible for all operating expenses for the leased premises.

## 4.    USE OF PREMISES AND COMMON AREAS:

4.1.    **Use of Premises and Property**.  The Premises shall be used by the Tenant for the purpose(s) set forth in **Section 1.7** above and for no other purpose whatsoever.  Tenant shall not, at any time, use or occupy, or suffer or permit anyone to use or occupy, the Premises, or do or permit anything to be done in the Premises or the Property, in any manner that may (a) violate any Certificate of Occupancy for the Premises or the Property; (b) cause, or be liable to cause, injury to, or in any way impair the proper utilization of, all or any portion of the Property (including, but not limited to, the structural elements of the Property) or any equipment, facilities or systems therein; (c) constitute a violation of the laws and requirements of any public authority or the requirements of insurance bodies or the rules and regulations of the Property, including any covenant, condition or restriction affecting the Property; (d) exceed the load bearing capacity of the floor of the Premises; (e) impair or tend to impair the character, reputation or appearance of the Property; or (e) unreasonably annoy, inconvenience or disrupt the operations or tenancies of other tenants or users of the Property.

4.2.    **Use of Common Areas**.  As used herein, "**Common Areas**" shall mean all areas within the Property that are available for the common use of tenants of the Property and that are not leased or held for the exclusive use of Tenant or other tenants or licensees, including, but not limited to, parking areas, driveways, sidewalks, loading areas, access roads, corridors, landscaping and planted areas.  Tenant shall have the nonexclusive right to use the Common Areas for the purposes intended, subject to such reasonable rules and regulations as Landlord may uniformly establish from time to time.  Tenant shall not interfere with the rights of any or all of Landlord, other tenants or licensees, or any other person entitled to use the Common Areas.  Landlord, from time to

time, may change any or all of the size, location, nature and use of any of the Common Areas although such changes may result in inconvenience to Tenant, so long as such changes do not materially and adversely affect Tenant's use of the Premises.  In addition to the foregoing, Landlord may, at any time, close or suspend access to any Common Areas to perform any acts in the Common Areas as, in Landlord's reasonable judgment, are desirable to improve or maintain either or both of the Premises and the Property, or are required in order to satisfy Landlord's obligations under either or both of **Sections 13.2** and **18**; provided, however, that Landlord shall use reasonable efforts not to disrupt Tenant's use and operation of the Premises in connection therewith. .  Except as provided in Sections 18 and 19 hereof and except during times when Landlord is making improvements to the Parking Lot as provided in Section 24.20 hereof, in the event Landlord materially and adversely disrupts Tenant's use of the Common Areas for a period of longer than thirty (30) days after notice of such disruption from Tenant to Landlord, due to causes within the reasonable control of the Landlord, Base Rent shall be reduced by one-half of the Base Rent then due on a per-diem basis for each day  after said thirty (30) days that Tenant's use is so disrupted.

      **4.3.**   **Signage**.  Tenant shall not affix any sign of any size or character to any portion of the Property, without prior written approval of Landlord, which approval shall not be unreasonably withheld or delayed. Tenant shall remove all signs of Tenant upon the expiration or earlier termination of this Lease and immediately repair any damage to either or both of the Property and the Premises caused by, or resulting from, such removal.

      **4.4.**   **Security Deposit**.  INTENTIONALLY OMITTED

      **5.**   **CONDITION AND DELIVERY OF PREMISES**.

      **5.1.**   **Condition of Premises**.  Tenant agrees that Tenant is familiar with the condition of both the Premises and the Property, and Tenant hereby accepts the foregoing on an "AS-IS," "WHERE-IS" basis, except for the repairs to be performed by Landlord pursuant to Section 13.2 hereof.  Tenant acknowledges that neither Landlord nor Agent, nor any representative of Landlord, has made any representation as to the condition of the foregoing or the suitability of the foregoing for Tenant's intended use.  Tenant represents and warrants that Tenant has made its own inspection of the foregoing.  Neither Landlord nor Agent shall be obligated to make any repairs, replacements or improvements (whether structural or otherwise) of any kind or nature to the foregoing in connection with, or in consideration of, this Lease, except (a) as set forth in **Sections 13.2** and **18** and (b) with respect to all (if any) repairs and improvements expressly and specifically described in **Exhibit B** attached hereto ("**Work Items**"). Landlord agrees to make reasonable efforts to enforce, or cause Agent to enforce, upon Tenant's request, all manufacturer's or contractor's warranties, if any, issued in connection with any of the Work Items.

      **5.2.**   **Delay in Commencement**.  Landlord shall not be liable to Tenant if Landlord does not deliver possession of the Premises to Tenant on the Commencement Date.  The obligations of Tenant under the Lease shall not be affected thereby, except that the Commencement Date shall be delayed until Landlord delivers possession of the Premises to Tenant, and the Lease Term shall be extended by a period equal to the number of days of delay in delivery of possession of the Premises to Tenant, plus the number of days necessary to end the Lease Term on the last day of a month.

      **6.**   **SUBORDINATION; NOTICES TO SUPERIOR LESSORS AND MORTGAGEES; ATTORNMENT**.

      **6.1.**   **Subordination**.  This Lease shall be subject and subordinate at all times to any mortgage or deed of trust that may now exist or hereafter be placed upon, and encumber, any or all of the Property; any ground leases or underlying leases for the benefit of the Property; or all or any portion of Landlord's interest or estate in any of said items.  Notwithstanding the foregoing, Landlord shall have the right to subordinate or cause to be subordinated any such ground leases or underlying leases that benefit the Property or any such mortgage or deed of trust liens to this Lease.  Tenant shall execute and deliver, upon demand by Landlord and in the form reasonably requested by Landlord, any additional documents evidencing the priority of subordination of this Lease with respect to any such ground leases or underlying leases for the benefit of the Property or any such mortgage or deed of trust.

**6.2.**    **Attornment**.  At the request of any lessor under any ground lease or underlying Lease affecting the property or the mortgage under any mortgage or trust deed affecting the Property (individually a "**Superior Party**" and collectively "**Superior Parties**)", Tenant shall attorn to such Superior Parties, their successors in interest or any purchaser in a foreclosure sale.  If any or mortgagee or any other person or entity shall succeed to the rights of Landlord under this Lease, whether through possession or foreclosure action or the delivery of a new lease or deed, then at the request of the successor landlord and upon such successor landlord's written agreement to accept Tenant's attornment and to recognize Tenant's interest under this Lease, Tenant shall be deemed to have attorned to and recognized such successor landlord as Landlord under this Lease.  The provisions of this **Section 6.2** are self-operative and require no further instruments to give effect hereto; provided, however, that Tenant shall promptly execute and deliver any instrument that such successor landlord may reasonably request (i) evidencing such attornment, (ii) setting forth the terms and conditions of Tenant's tenancy, and (iii) containing such other terms and conditions as may be required by such Superior Party, provided such terms and conditions do not materially increase Tenant's obligations or materially and adversely affect the rights of Tenant under this Lease.  Upon such attornment this Lease shall continue in full force and effect as a direct lease between such successor landlord and Tenant upon all of the terms, conditions and covenants set forth in this Lease except that such successor landlord shall not be; (a) lliable for any act or omission of Landlord (except to the extent such act or omission continues beyond the date when such successor landlord succeeds to Landlord's interest and Tenant gives notice of such act or omission); (b) subject to any defense, claim, counterclaim, set-off or offsets which Tenant may have against Landlord; (c) bound by any prepayment of more than one month's Rent to any prior landlord; (d) bound by any obligation to make any payment to Tenant which was required to be made prior to the time such successor landlord succeeded to Landlord's interest; except to the extent such successor Landlord received funds for the express purpose of making such payments; (e) bound by any obligation to perform any work or to make improvements to the Premises except for (x) repairs and maintenance required to be made by Landlord under this Lease, and (y) repairs to the Premises as a result of damage by fire or other casualty or a partial condemnation arsenate to the provisions of this Lease, but only to the extent that such repairs can reasonably be made from the net proceeds of any insurance or condemnation awards, respectively, actually made available to such successor landlord; or (f) bound by any modification, amendment or renewal of this Lease made without successor landlord's consent.

**6.3.**    **Tenant's Termination Right**.  Except as provided in **Section 24.17** of this Lease, as long as any ground or underlying lease, mortgage or deed of trust affecting the Property shall exist, Tenant shall not seek to terminate this Lease by reason of any act or omission of Landlord (a) until Tenant shall have given notice of such act or omission to all Superior Parties for whom Tenant has received notice of their names and addresses, and (b) until sixty (60) days have elapsed following the giving of notice of such default and the expiration of any applicable notice or grace periods (unless such act or omission is not capable of being remedied within such sixty (60) days and a cure is commenced within such period and is diligently prosecuted thereafter), during which period such Superior Parties shall have the right, but not the obligation, to remedy such act or omission and thereafter diligently proceed to so remedy such act or obligation.  If any Superior Party elects to remedy such act or omission of Landlord, Tenant shall not seek to terminate this Lease so long as such Superior Party is proceeding with reasonable diligence to effect such remedy.

**6.4.**    **Estoppel Certificates**.  Tenant agrees, from time to time and within ten (10) days after request by Landlord, to deliver to Landlord, or Landlord's designee, a written statement executed and acknowledged by Tenant, in form reasonably satisfactory to Landlord, (a) stating the Commencement Date, and the Expiration Date, and that this Lease is then in full force and effect and has not been modified (or if modified, setting forth all modifications), (b) setting forth the date to which the Base Rent and any Additional Rent have been paid, together with the amount of monthly Base Rent then payable, (c) stating whether or not, to the best of Tenant's knowledge, Tenant or Landlord are in default under this Lease, and, if so, setting forth the specific nature of all such defaults, (d) stating the amount of the Security Deposit, if any, under this Lease, (e) stating whether there are any subleases or assignments affecting the Premises, (f) stating whether or not the Work Items to be performed by Landlord have been substantially completed subject, if applicable, to any latent defects or any obligation, warranty, or covenant of Landlord to cure any subsequently discovered defects or variations in such work, or whether or not the Commencement Date is subject to extension and the Rent is subject to set-off or reduction because any Work Items to be performed by landlord are not complete, and, if so, setting forth in the specific nature of the work which is not complete or which is giving rise to a delay in the Commencement Date or the right of set-off or reduction, (g) stating

whether or not Tenant has any existing rights of abatement or set-off, causes of action, defenses, counterclaims or dispute under the Lease and if any exists, setting forth the specific nature thereof, (h) stating the addresses of Tenant to which all notices and communication under the Lease shall be sent, and (i) responding to any other matters reasonably requested by Landlord.  Landlord and Tenant intend that any statement delivered pursuant to this section may be relied upon by any prospective purchaser or mortgagee of the Property or of any interest therein or any other Landlord designee.

      **6.5.**   **Transfer for Landlord**.  In the event of a sale or conveyance by Landlord of the Property, the same shall operate to release Landlord from any future liability for any of the covenants or conditions, express or implied, herein contained in favor of Tenant, and in such event Tenant agrees to look solely to Landlord's successor in interest with respect thereto and agrees to attorn to such successor.

      **7.**     **QUIET ENJOYMENT**.  Subject to the provisions of this Lease, and the terms of all ground or underlying leases and mortgages or deeds in trust affecting the Property, so long as Tenant pays all of the Rent and performs all of its other obligations hereunder, Tenant shall not be disturbed in its possession of the Premises by Landlord, Agent or any other person lawfully claiming through or under Landlord.  This covenant shall be construed as a covenant running with the Property and is not a personal covenant of Landlord. Notwithstanding the foregoing, however, Tenant acknowledges and agrees that Landlord shall have the unfettered and unilateral right to use portions of the Common Areas (inclusive of the roof of the Building) for such purposes and uses as Landlord may desire; provided, however, that in all events and under all circumstances, Landlord's use of any portion of the Common Areas shall not interfere, in any material respect, with any or all of (a) Tenant's rights to occupy and use the Common Areas (in the manner and for the purposes contemplated hereunder); (b) Tenant's right to utilize the vehicular parking areas located on the Common Areas; and (c) Tenant's right of access, ingress and egress to and from the Common Areas.

      **8.**     **ASSIGNMENT, SUBLETTING AND MORTGAGING**.

      **8.1.**   **Prohibition**.  Except as expressly set forth herein, Tenant acknowledges that this Lease and the Rent due under this Lease have been agreed to by Landlord in reliance upon Tenant's reputation and creditworthiness and upon the continued operation of the Premises by Tenant for the particular use set forth in **Section 3** above; therefore, Tenant shall not, whether voluntarily, or by operation of law, or otherwise: (a) assign or otherwise transfer this Lease; (b) sublet the Premises or any part thereof, or allow the same to be used or occupied by anyone other than Tenant; or (c) mortgage, pledge, encumber, or otherwise hypothecate this Lease or the Premises, or any part thereof, in any manner whatsoever, without in each instance obtaining the prior written consent of Landlord, which consent may be given or withheld in Landlord's sole discretion.  If Tenant is not in default of this Lease, Landlord shall not unreasonably withhold its consent to an assignment of this Lease or a sublease of all or a portion of the Premises.  Any purported assignment, mortgage, transfer, pledge or sublease made without the prior written consent of Landlord shall be absolutely null and void.  No assignment of this Lease shall be effective and valid unless and until the assignee executes and delivers to Landlord any and all documentation reasonably required by Landlord in order to evidence assignee's assumption of all obligations of Tenant hereunder.  Any consent by Landlord to a particular assignment, sublease or mortgage shall not constitute consent or approval of any subsequent assignment, sublease or mortgage, and Landlord's written approval shall be required in all such instances.  No consent by Landlord to any assignment or sublease shall be deemed to release Tenant from its obligations hereunder and Tenant shall remain fully liable for performance of all obligations under this Lease.

      **8.2.**   **Rights of Landlord**.  If this Lease is assigned, or if the Premises (or any part thereof) are sublet or used or occupied by anyone other than Tenant, whether or not in violation of this Lease, Landlord or Agent may (without prejudice to, or waiver of its rights), collect Rent from the assignee, subtenant or occupant.  Landlord or Agent may apply the net amount collected to the Rent herein reserved, but no such assignment, subletting, occupancy or collection shall be deemed a waiver of any of the provisions of this **Section 8**.  With respect to the allocable portion of the Premises sublet, in the event that the total rent and any other considerations received under any sublease by Tenant is greater than the total Rent required to be paid, from time to time, under this Lease, Tenant shall pay to Landlord fifty percent (50%) of such excess as received from any subtenant and such amount shall be deemed a component of the Additional Rent.  If this Lease is assigned and if the total rent and other consideration

received for such assignment by Tenant exceeds the total Rent required to be paid hereunder, Tenant shall pay fifty percent (50%) of such excess when received from the assignee.

**8.3.** **Permitted Transfers**. The provisions of **Section 8.1(a)** shall apply to a transfer of a majority of the voting stock of Tenant or to any other change in voting control of Tenant (if Tenant is a corporation), or to a transfer of a majority (*i.e.* greater than 49% interest) of the general partnership or membership interests in Tenant (if Tenant is a partnership or a limited liability company) or managerial control of Tenant, or to any comparable transaction involving any other form of business entity, whether effectuated in one or more transactions, as if such transfer were an assignment of this Lease; but said provisions shall not apply to such a transfer, provided, in any of such events, the successor to Tenant (or any party remaining liable for the obligations of Tenant hereunder) (i) has a net worth at least equal to the net worth of Tenant on the Commencement Date or (ii) is capable of satisfying Tenant's obligations hereunder, in Landlord's reasonable judgment. Any such permitted transferee shall execute and deliver to Landlord any and all documentation reasonably required by Landlord in order to evidence assignee's assumption of all obligations of Tenant hereunder.

## 9.   **COMPLIANCE WITH LAWS**.

**9.1.** **Compliance with Laws**. Tenant shall, at its sole expense (regardless of the cost thereof), comply with all local, state and federal laws, rules, regulations and requirements now or hereafter in force and all judicial and administrative decisions pertaining thereto (collectively, "**Laws**"), pertaining to either or both of the Premises and Tenant's use and occupancy thereof. If any license or permit is required for the conduct of Tenant's business in the Premises, Tenant, at its expense, shall procure such license prior to the Commencement Date, and shall maintain such license or permit in good standing throughout the Term. Tenant shall give prompt notice to Landlord of any written notice it receives of the alleged violation of any law or requirement of any governmental or administrative authority with respect to either or both of the Premises and the use or occupation thereof. The judgment of any court of competent jurisdiction, or the admission of Tenant in any action or proceeding against Tenant, whether Landlord is a party thereto or not, that any such Law pertaining to the Premises has been violated, shall be conclusive of that fact as between Landlord and Tenant.

**9.2.** **Hazardous Materials**. Tenant shall not (a) cause or permit any Hazardous Materials (defined below) to be brought into the Building, (b) cause or permit the storage or use of Hazardous Materials in any manner within or in the vicinity of the Building or (c) cause or permit the escape, disposal or release of any Hazardous Materials within or in the vicinity of the Building. If during the Term (or any extension thereof) any Hazardous Material is generated, transported, stored, used, treated or disposed of at, to, from, on or in either or both of the Premises and the Property by, or as a result of any act or omission of, any or all of Tenant and any or all of Tenant's Parties (defined below): (i) Tenant shall, at its own cost, at all times comply (and cause all others to comply) with all laws (federal, state or local) relating to Hazardous Materials, including, but not limited to, all Environmental Laws (defined below), and Tenant shall further, at its own cost, obtain and maintain in full force and effect at all times all permits and other approvals required in connection therewith; (ii) Tenant shall promptly provide Landlord or Agent with complete copies of all communications, permits or agreements with, from or issued by any governmental authority or agency (federal, state or local) or any private entity relating in any way to the presence, release, threat of release, or placement of Hazardous Materials on or in the Premises or any portion of the Property, or the generation, transportation, storage, use, treatment, or disposal at, on, in or from the Premises, of any Hazardous Materials; (iii) Landlord, Agent and their respective agents and employees shall have the right to either or both (x) enter the Premises and (y) conduct appropriate tests for the purposes of ascertaining Tenant's compliance with all applicable laws (including Environmental Laws), rules or permits relating in any way to the generation, transport, storage, use, treatment, disposal or presence of Hazardous Materials on, at, in or from all or any portion of either or both of the Premises and the Property; and (iv) upon written request by Landlord or Agent, Tenant shall provide Landlord with the results of reasonably appropriate tests of air, water or soil to demonstrate that Tenant complies with all applicable laws, rules or permits relating in any way to the generation, transport, storage, use, treatment, disposal or presence of Hazardous Materials on, at, in or from all or any portion of either or both of the Premises and the Property. This **Section 9.2** does not authorize the generation, transportation, storage, use, treatment or disposal of any Hazardous Materials at, to, from, on or in the Premises in contravention of this **Section 9**. Tenant covenants to investigate, clean up and otherwise remediate, at Tenant's sole expense, any release of

Hazardous Materials caused, contributed to or created by any or all of (A) Tenant and (B) any or all of Tenant's officers, directors, invitees, agents, employees, contractors or representatives ("**Tenant Parties**") during the Term. Such investigation and remediation shall be performed only after Tenant has obtained Landlord's prior written consent; provided, however, that Tenant shall be entitled to respond immediately to an emergency without first obtaining such consent. All remediation shall be performed in strict compliance with Environmental Laws and to the reasonable satisfaction of Landlord. Tenant shall be liable for any and all conditions covered hereby, and for all costs relating thereto, that are caused or created by any or all of Tenant and any or all of Tenant's Parties. Tenant shall not enter into any settlement agreement, consent decree or other compromise with respect to any claims relating to any Hazardous Materials in any way connected to the Premises without first obtaining Landlord's written consent (which consent may be given or withheld in Landlord's sole, but reasonable, discretion) and affording Landlord the reasonable opportunity to participate in any such proceedings. As used herein, the term (x) "**Environmental Laws**" shall mean any and all laws pertaining to Hazardous Materials or that otherwise deal with, or relate to, air or water quality, air emissions, soil or ground conditions or other environmental matters of any kind; and (y) "**Hazardous Materials**" shall mean any waste, material or substance (whether in the form of liquids, solids or gases, and whether or not air-borne) that is or may be deemed to be or include a pesticide, petroleum, asbestos, polychlorinated biphenyl, radioactive material, urea formaldehyde or any other pollutant or contaminant that is or may be deemed to be hazardous, toxic, ignitable, reactive, corrosive, dangerous, harmful or injurious, or that presents a risk to public health or to the environment, and that is or becomes regulated by any Environmental Law. Notwithstanding the foregoing, Landlord acknowledges that Tenant is engaged in a food processing business, and that in connection with food processing Tenant may utilize materials and substances that could be toxic, corrosive, harmful, or injurious if used improperly. Tenant acknowledges that its use of said materials and substances shall be subject to **Sections 9.1** and **17.2.1** hereof.

## 10.   INSURANCE.

   **10.1.   Insurance to be Maintained by Landlord**. Landlord shall maintain (a) "all-risk" property insurance covering the Property (at its full replacement cost), but excluding Tenant's Property (defined below), and (b) commercial general liability insurance covering Landlord for claims arising out of liability for bodily injury, death, personal injury, advertising injury and property damage occurring in and about the Property and otherwise resulting from any acts and operations of Landlord, its agents and employees, and (c) rent loss insurance (collectively, "**Landlord's Policies**"), all of the above with limits that are required by any lender(s) of Landlord, or as are otherwise reasonably determined by Landlord.

   **10.2.   Insurance to be Maintained by Tenant**. Tenant shall purchase at its own expense and keep in force during this Lease, a policy or policies of (i) commercial general liability insurance, including personal injury and property damage, in the amount of not less than $2,000,000.00 per occurrence and $5,000,000.00 annual general aggregate per location, and comprehensive automobile liability insurance covering Tenant against any losses arising out of liability for personal injuries or deaths of persons and property damage occurring in or about the Premises and Property (including as a result of any, (ii) "all-risk" property insurance covering Tenant's Property (and damage to other property resulting from any acts or operations of Tenant) and Alterations , as defined in **Section 11.1** and (iii) Workers Compensation insurance as required by law. Said policies shall (a) name Landlord, Agent, and any party holding an interest to which this Lease may be subordinated as additional insureds, (b) be issued by an insurance company with a Best rating of A-X or better and otherwise reasonably acceptable to Landlord and licensed to do business in the state in which the Property is located, (c) provide that said insurance shall not be canceled or materially modified unless 30 days' prior written notice shall have been given to Landlord, (d) provide coverage on an occurrence basis; (e) provide coverage for the indemnity obligations of Tenant under this Lease; (f) contain a severability of insured parties provision and a cross liability endorsement; (g) be primary, not contributing with, and not in excess of, coverage that Landlord may carry; (h) include a hostile fire endorsement; and (i) otherwise be in such form and include such coverages as Landlord may reasonably require. Said policy or policies or, at Landlord's option, Certificate of Insurance, in a form reasonably acceptable to Landlord, evidencing said policies, shall be delivered to Landlord by Tenant upon commencement of the Lease and renewals thereof shall be delivered at least 30 days prior to the expiration of said insurance.

10.3.   **Waiver of Subrogation**.   To the extent permitted by law, and without affecting the coverage provided by insurance required to be maintained hereunder, Landlord and Tenant each waive any right to recover against the other for (a) damages to property, (b) damages to all or any portion of either or both of the Premises and the Property, or (c) claims arising by reason of the foregoing, to the extent such damages and claims are insured against or required to be insured against by Landlord or Tenant under this Lease, and Tenant waives any loss due to business interruption.   This provision is intended to waive, fully and for the benefit of each party, any rights and/or claims which might give rise to a right of subrogation by any insurance carrier.   The coverage obtained by each party pursuant to this Lease shall include, without limitation, a waiver of subrogation by the carrier which conforms to the provisions of this section.

## 11.   **ALTERATIONS**.

11.1.   **Procedural Requirements**.   Tenant may, from time to time, at its expense, make alterations or improvements in and to the Premises (hereinafter collectively referred to as "**Alterations**"), provided that Tenant first obtains the written consent of Landlord in each instance.   Landlord's consent to Alterations shall not be unreasonably withheld, provided that:   (a) the Alterations are non-structural and the structural integrity of the Property shall not be affected; (b) the Alterations are to the interior of the Premises; (c) the proper functioning of the mechanical, electrical, heating, ventilating, air-conditioning ("**HVAC**"), sanitary and other service systems of the Property shall not be adversely affected and the usage of such systems by Tenant shall not be increased; (d) the Alterations have no adverse effect on other leased premises in the Property; (e) Tenant shall have appropriate insurance coverage, reasonably satisfactory to Landlord, regarding the performance and installation of the Alterations; (f) the Alterations shall conform with all other requirements of this Lease; and (g) Tenant shall have provided Landlord with reasonably detailed plans (the "**Plans**") for such Alterations in advance of requesting Landlord's consent.   Additionally, before proceeding with any Alterations, Tenant shall (i) at Tenant's expense, obtain all necessary governmental permits and certificates for the commencement and prosecution of Alterations; (ii) submit to Agent, for Landlord's written approval, working drawings, plans and specifications and all permits for the work to be done and Tenant shall not proceed with such Alterations until it has received said approval; and (iii) cause those contractors, materialmen and suppliers engaged to perform the Alterations to deliver to Landlord certificates of insurance (in a form reasonably acceptable to Landlord) evidencing policies of commercial general liability insurance (providing the same coverages as required in **Section 10.2(i)**) and workers compensation insurance.   Such insurance policies shall satisfy the obligations imposed under **Section 10.2(a)** through **(d)**, **(f)**, **(g)**, **(h)** and **(i)**.   After obtaining Landlord's approval to the Alterations, Tenant shall give Landlord at least five days' prior written notice of the commencement of any Alterations at the Premises, and Landlord may elect to record and post notices of non-responsibility at the Premises.   Landlord agrees not to unreasonably withhold, condition or delay its consent to the Alterations described on Exhibit "E" attached hereto and by this reference incorporated herein, made in compliance with the requirements of this Section 11.   Additionally, Tenant may make non-structural Alterations to the Premises, in accordance with   Sections 11.2 and 11.3, without the consent of, upon prior written notice to, Landlord, so long as said Alterations; (i) do not require a building permit; (ii) do not  involve alterations to building systems; or (iii) cost in excess of than Five  Thousand Dollars ($5,000.00) per change or in excess of Fifty Thousand Dollars ($50,000.00) in the aggregate during the Term.

11.2.   **Performance of Alterations**.   Tenant shall cause the Alterations to be performed in compliance with all applicable permits, laws and requirements of public authorities, and with Landlord's reasonable rules and regulations or any other restrictions that Landlord or Agent may impose on the Alterations.   Tenant shall cause the Alterations to be diligently performed in a good and workmanlike manner, using new materials and equipment at least equal in quality and class to the standards for the Property established by Landlord or Agent. Tenant shall obtain all necessary permits and certificates for final governmental approval of the Alterations and shall provide Landlord with "as built" plans, copies of all construction contracts, governmental permits and certificates and proof of payment for all labor and materials, including, without limitation, copies of paid invoices and final lien waivers.

11.3.   **Lien Prohibition**.   Tenant shall pay when due all claims for labor and material furnished to the Premises in connection with the Alterations.   Tenant shall not permit any mechanics or materialmen's liens to attach to the Premises or the Property.   Tenant, at its expense, shall procure the satisfaction or discharge of record of

all such liens and encumbrances within 30 days after the filing thereof; or, if acceptable to Landlord, in its reasonable determination, Tenant may procure (for Landlord's benefit) a bond or other protection against any such lien or encumbrance.  In the event Tenant has not so performed, Landlord may, at its option, pay and discharge such liens and Tenant shall be responsible to reimburse Landlord, on demand and as Additional Rent under this Lease, for all costs and expenses incurred in connection therewith, together with interest thereon at the rate set forth in **Section 22.3**, which expenses shall include reasonable fees of attorneys of Landlord's choosing, and any costs in posting bond to effect discharge or release of the lien as an encumbrance against the Premises or the Property.

### 12.    LANDLORD'S AND TENANT'S PROPERTY.  INTENTIONALLY OMITTED

### 13.    REPAIRS AND MAINTENANCE.

**13.1.    Tenant Repairs and Maintenance**.  Tenant shall, at its expense, throughout the Term, (i) maintain and preserve, in first-class condition (subject to normal and customary wear and tear), the Premises and the fixtures and appurtenances therein (including, but not limited to, the Premises' plumbing and HVAC systems, all doors, overhead or otherwise, glass and levelers located in the Premises or otherwise available in the Property for Tenant's sole use; and excluding, however, those components of the Premises for which Landlord is expressly responsible under **Section 13.2**); and (ii) maintain, in full force and effect, a preventative maintenance and service contract with a reputable service provider for maintenance of the HVAC systems of the Premises.  Tenant shall also be responsible for all cost and expenses incurred to perform any and all repairs and replacements (whether structural or non-structural; interior or exterior; and ordinary or extraordinary), in and to the Premises and the Property and the facilities and systems thereof, if and to the extent that the need for such repairs or replacements arises directly or indirectly from (a) the performance or existence of any Alterations, (b) the installation, use or operation of Tenant's Property in the Premises, (c) the moving of Tenant's Property in or out of the Property, or (d) any act, omission, misuse, or neglect of Tenant, any of its subtenants, or others entering into the Premises by act or omission of Tenant or any subtenant.  Any repairs or replacements required to be made by Tenant to any or all of the structural components of the Property and the mechanical, electrical, sanitary, HVAC, or other systems of the Property or Premises shall be performed by appropriately licensed contractors approved by Landlord, which approval shall not be unreasonably withheld.  All such repairs or replacements shall be subject to the supervision and control of Landlord, and all repairs and replacements shall be made with materials of equal or better quality than the items being repaired or replaced. .  Landlord represents that, as of the Commencement Date, the existing HVAC system shall be in good repair.  Notwithstanding the provisions of this Section 13.1,, Landlord shall make any  repair required to be made to the existing HVAC system which is not caused by a Tenant Necessitated Repair, as hereinafter defined, and which costs more than Ten Thousand Dollars ($10,000.00), provided however it is understood that all other repairs to said  HVAC system shall be made by Tenant as herein provided.

**13.2.    Landlord Repairs**.  Notwithstanding anything contrary herein, Landlord shall repair, replace and restore the foundation, exterior and interior load-bearing walls, roof structure and roof covering and tuckpointing of the Property; provided, however, that in the event that any such repair, replacement or restoration is necessitated by any or all of the matters set forth in **Sections 13.1(a)**, **(b)**, **(c)** or **(d)** [collectively, "**Tenant Necessitated Repairs**"], then Tenant shall be required to reimburse Landlord for all costs and expenses that Landlord incurs in order to perform such Tenant Necessitated Repairs, and such reimbursement shall be paid, in full, within 10 days after Landlord's delivery of demand therefor.  Landlord agrees to commence the repairs, replacements or restoration described in this **Section 13.2** within a reasonable period of time after receiving from Tenant written notice of the need for such repairs.

### 14.    UTILITIES AND OTHER EXPENSES.  Tenant shall be responsible for the costs of any and all utilities used in connection with its use of the Premises; shall provide for scavenger, cleaning and extermination services; and shall pay for such services when payments are due.  Tenant shall be solely responsible for the repair and maintenance of any meters or sub-meters necessary in connection with utility services.  Tenant's use of electrical energy in the Premises shall not, at any time, exceed the capacity of either or both of (i) any of the electrical conductors and equipment in or otherwise servicing the Premises; and (ii) the HVAC systems of either or both of the Premises and the Property.

**15.**    **INVOLUNTARY CESSATION OF SERVICES**.  Landlord reserves the right, without any liability to Tenant and without affecting Tenant's covenants and obligations hereunder, to stop service of the HVAC, electric, sanitary, elevator (if any), or other systems serving the Premises, or to stop any other services required by Landlord under this Lease, whenever and for so long as may be necessary by reason of (i) accidents, emergencies, strikes, or the making of repairs or changes which Landlord or Agent in good faith deems necessary or (ii) any other cause beyond Landlord's reasonable control.  Further, it is also understood and agreed that Landlord or Agent shall have no liability or responsibility for a cessation of services to the Premises or to the Property that occurs as a result of causes beyond Landlord's or Agent's reasonable control.  No such interruption of service shall be deemed an eviction or disturbance of Tenant's use and possession of the Premises or any part thereof, or render Landlord or Agent liable to Tenant for damages, or relieve Tenant from performance of Tenant's obligations under this Lease, including, but not limited to, the obligation to pay Rent, or impose any liability upon Landlord or Agent by reason of inconvenience to Tenant, or interruption of Tenant's business or otherwise.

**16.**    **LANDLORD'S RIGHTS**.  Landlord, Agent and their respective agents, employees and representatives shall have the right to enter and/or pass through the Premises at any time or times upon reasonable prior notice (except in the event of emergency):  (a) to examine and inspect the Premises and to show them to actual and prospective lenders, prospective purchasers or mortgagees of the Property or providers of capital to Landlord and its affiliates; and (b) to make such repairs, alterations, additions and improvements in or to all or any portion of either or both of the Premises and the Property, or the Property's facilities and equipment as Landlord is required or desires to make.  Landlord and Agent shall be allowed to take all materials into and upon the Premises that may be required in connection with any repairs, alterations, additions or improvements, without any liability to Tenant and without any reduction or modification of Tenant's covenants and obligations hereunder; provided, however, that Landlord shall use reasonable efforts to avoid interference with Tenant's business operations and Tenant's occupancy and use of the Premises.  During the period of twelve months prior to the Expiration Date (or at any time, if Tenant has vacated or abandoned the Premises or is otherwise in default under this Lease), Landlord and its agents may exhibit the Premises to prospective tenants.  Additionally, Landlord and Agent shall have the following rights with respect to the Premises, exercisable without notice to Tenant, without liability to Tenant, and without being deemed an eviction or disturbance of Tenant's use or possession of the Premises or giving rise to any claim for setoff or abatement of Rent:  (i) to designate and approve, prior to installation, all types of signs; (ii) to have pass keys, access cards, or both, to the Premises; (iii) to decorate, remodel, repair, alter or otherwise prepare the Premises for reoccupancy at any time after Tenant vacates or abandons the Premises for more than 30 consecutive days or with no intention of reoccupying the Premises, and (iv) to change the name or address of the Property.

**17.**    **NON-LIABILITY AND INDEMNIFICATION**.

**17.1.**    **Non-Liability**.  Except as provided in **Section 17.2.2**, none of Landlord, Agent, any other managing agent, or their respective affiliates, owners, partners, directors, officers, agents and employees shall be liable to Tenant for any loss, injury, or damage, to Tenant or to any other person, or to its or their property, irrespective of the cause of such injury, damage or loss.  Further, except as provided in **Section 17.2.2**, none of Landlord, Agent, any other managing agent, or their respective partners, directors, officers, agents and employees shall be liable to Tenant (a) for any damage caused by other tenants or persons in, upon or about the Property, or caused by operations in construction of any public or quasi-public work; (b) with respect to matters for which Landlord is liable, for consequential or indirect damages purportedly arising out of any loss of use of the Premises or any equipment or facilities therein by Tenant or any person claiming through or under Tenant; (c) any latent defect in the Premises or the Property; (d) injury or damage to person or property caused by fire, or theft, or resulting from the operation of heating or air conditioning or lighting apparatus, or from falling plaster, or from steam, gas, electricity, water, rain, snow, ice, or dampness, that may leak or flow from any part of the Property, or from the pipes, appliances or plumbing work of the same.

**17.2.**    **Indemnification**.

**17.2.1.**     **Tenant Indemnification**.   Tenant hereby indemnifies, defends, and holds Landlord, Agent and their respective affiliates, owners, partners, directors, officers, agents and employees (collectively, "**Landlord Indemnified Parties**") harmless from and against any and all Losses (defined below) arising from or in connection with (a) the conduct or management of either or both the Property and the Premises or any business therein, or any work or Alterations done, or any condition created by any or all of Tenant and Tenant's Parties in or about the Premises during the Term or during the period of time, if any, prior to the Commencement Date that Tenant is given access to the Premises; (b) any act, omission or negligence of any or all of Tenant and Tenant's Parties; (c) any accident, injury or damage whatsoever (unless caused by Landlord's negligence) occurring in, at or upon either or both of the Property and the Premises and caused by any or all of Tenant and Tenant's Parties; (d) any breach by Tenant of any of its warranties and representations under this Lease; (e) any actions necessary to protect Landlord's interest under this Lease in a bankruptcy proceeding or other proceeding under the Bankruptcy Code; (f) any violation or alleged violation by any or all of Tenant and Tenant's Parties of any Law including, without limitation, any Environmental Law; (g) any breach of the provisions of **Section 9** by any or all of Tenant and Tenant's Parties; (h) claims for work or labor performed or materials supplies furnished to or at the request of any or all of Tenant and Tenant's Parties; (i) claims arising from any breach or default on the part of Tenant in the performance of any covenant contained in this Lease; (j) any Hazardous Materials used, exposed, emitted, released, discharged, generated, manufactured, sold, transported, handled, stored, treated, reused, presented, disposed of or recycled in, at, near or under all or any portion of the Premises as a result of the acts or omissions of any or all of Tenant and Tenant's Parties; or (k) the violation of any Environmental Law or any permit, application or consent required in connection with any Environmental Law by any or all of Tenant and Tenant's Parties with respect to the Premises during the Term, excluding, however, any violation of any Environmental Law resulting form the acts or omissions of Landlord and Landlord's employees, agents and contractors (collectively, "**Tenant's Indemnified Matters**").   In case any action or proceeding is brought against any or all of Landlord and the Landlord Indemnified Parties by reason of any of Tenant's Indemnified Matters, Tenant, upon notice from any or all of Landlord, Agent or any Superior Party (defined below), shall resist and defend such action or proceeding by counsel reasonably satisfactory to, or selected by, Landlord.   The term "**Losses**" shall mean all claims, demands, expenses, actions, judgments, damages (whether direct or indirect, known or unknown, foreseen or unforeseen), penalties, fines, liabilities, losses of every kind and nature (including, without limitation, property damage, diminution in value of Landlord's interest in the Premises or the Property, damages for the loss or restriction on use of any space or amenity within the Premises or the Property, damages arising from any adverse impact on marketing space in the Property, sums paid in settlement of claims and any costs and expenses associated with injury, illness or death to or of any person), suits, administrative proceedings, costs and fees, including, without limitation, attorneys' and consultants' fees and expenses, and the costs of cleanup, remediation, removal and restoration, that are in any way related to any matter covered by the foregoing indemnity.   The provisions of this **Section 17.2.1** shall survive the expiration or termination of this Lease.

**17.2.2.**     **Landlord Indemnification**.   Landlord hereby indemnifies, defends, and holds Tenant harmless from and against any and all claims, losses, costs, damages (actual, but not consequential or speculative), judgments, causes of action, administrative proceedings and third party expenses (including, but not limited to, court costs and attorneys' reasonable fees) actually suffered or incurred by Tenant as the sole and direct result of any negligent, willful or intentional acts or omissions of any or all of Landlord, Agent and any parties within the direct and sole control of either or both of Landlord and Agent.   In the event that any action or proceeding is brought against Tenant, and the foregoing indemnity is applicable to such action or proceeding, then Landlord, upon notice from Tenant, shall resist and defend such action or proceeding by counsel reasonably satisfactory to Tenant. Notwithstanding anything to the contrary set forth in this Lease, however, in all events and under all circumstances, the liability of Landlord to Tenant shall be limited to the interest of Landlord in the Property, and Tenant agrees to look solely to Landlord's interest in the Property for the recovery of any judgment or award against Landlord, it being intended that Landlord shall not be personally liable for any judgment or deficiency.   The provisions of this **Section 17.2.2** shall survive the expiration or termination of this Lease.

**17.3.**   **Force Majeure**.   Except for the payment of rent or other sums due to be paid Tenant hereunder, if either Landlord or Tenant is in any way delayed or prevented from performing any obligation due to fire, act of nature, governmental act or failure to act, strike, labor dispute, inability to procure materials, or any cause beyond such party's reasonable control (whether similar or dissimilar to the foregoing events), then the time for

performance of such obligation shall be excused for the period of such delay or prevention and extended for a period equal to the period of such delay, interruption or prevention.

**17.4.** **Limitation**. Notwithstanding anything to the contrary herein, nothing in this **Section 17** shall be deemed to exculpate Landlord from, or indemnify Landlord for, Landlord's negligent or willful acts or omissions.

## 18. **DAMAGE OR DESTRUCTION**.

**18.1.** **Notification and Repair**. Tenant shall give prompt notice to Landlord and Agent of (a) any fire or other casualty to the Premises or the Property, and (b) any damage to or defect in any part or appurtenance of the Property's sanitary, electrical, HVAC, elevator or other systems located in or passing through the Premises or any part thereof. Subject to the provisions of **Section 18.3** below, if either or both of the Property and the Premises is damaged by fire or other insured casualty, Landlord shall repair (or cause Agent to repair) the damage and restore and rebuild the Property and/or the Premises (except for Tenant's Property and Alterations) with reasonable dispatch after (x) notice to it of the damage or destruction and (y) the adjustment of the insurance proceeds attributable to such damage. Subject to the provisions of **Section 18.3** below, Tenant shall not be entitled to terminate this Lease and no damages, compensation or claim shall be payable by Landlord for purported inconvenience, loss of business or annoyance arising from any repair or restoration of any portion of the Premises or of the Property  pursuant to this Section.  Landlord (or Agent, as the case may be) shall use its diligent, good faith efforts to make such repair or restoration promptly and in such manner as not to unreasonably interfere with Tenant's use and occupancy of the Premises, but Landlord or Agent shall not be required to do such repair or restoration work except during normal business hours of business days.

**18.2.** **Rental Abatement**. If (a) the Property is damaged by fire or other casualty thereby causing the Premises to be inaccessible or (b) the Premises are partially damaged by fire or other casualty, the Rent shall be proportionally abated to the extent of any actual loss of use of the Premises by Tenant.

**18.3.** **Total Destruction**. If the Property or the Premises shall be totally destroyed by fire or other casualty, or if the Property shall be so damaged by fire or other casualty that (in the reasonable opinion of a reputable contractor or architect designated by Landlord and reasonably acceptable to Tenant):  (i) its repair or restoration requires more than 150 days or (ii) such repair or restoration requires the expenditure of more than 50% of the full insurable value of the Property immediately prior to the casualty or (iii) the damage (x) is less than the amount stated in (ii) above, but more than 10% of the full insurable value of the Property; and (y) occurs during the last two years of Lease Term, Landlord and Tenant shall each have the option to terminate this Lease (by so advising the other, in writing) within 10 days after said contractor or architect delivers written notice of its opinion to Landlord and Tenant, but in all events prior to the commencement of any restoration of the Premises or the Property by Landlord.  In such event, the termination shall be effective as of the date upon which either Landlord or Tenant, as the case may be, receives timely written notice from the other terminating this Lease pursuant to the preceding sentence.  If neither Landlord nor Tenant timely delivers a termination notice, this Lease shall remain in full force and effect.  If (A) any Superior Party or other party entitled to the insurance proceeds fails to make such proceeds available to Landlord in an amount sufficient for restoration of the Premises or the Property, or (B) the issuer of any casualty insurance policies on the Property fails to make available to Landlord sufficient proceeds for restoration of the Premises or the Property, then Landlord may, at Landlord's sole option, terminate this Lease by giving Tenant written notice to such effect within 30 days after Landlord receives notice from the Superior Party or insurance company, as the case may be, that such proceeds shall not be made available, in which event the termination of this Lease shall be effective as of the date Tenant receives written notice from Landlord of Landlord's election to terminate this Lease.  For purposes of this **Section 18.3** only, "**full insurable value**" shall mean replacement cost, less the cost of footings, foundations and other structures below grade.

## 19. **EMINENT DOMAIN**. If the whole, or any substantial portion, of the Property is taken or condemned for any public use under any Law or by right of eminent domain, or by private purchase in lieu thereof, and such taking would prevent or materially interfere with the Permitted Use of the Premises, this Lease shall

terminate effective when the physical taking of said Premises occurs.  If less than a substantial portion of the Property is so taken or condemned, or if the taking or condemnation is temporary (regardless of the portion of the Property affected), this Lease shall not terminate, but the Rent payable hereunder shall be proportionally abated to the extent of any actual loss of use of the Premises by Tenant.  Landlord shall be entitled to any and all payment, income, rent or award, or any interest therein whatsoever, which may be paid or made in connection with such a taking or conveyance, and Tenant shall have no claim against Landlord for the value of any unexpired portion of this Lease.  Notwithstanding the foregoing, Tenant may file a claim for loss of business or goodwill, or for its personal property taken, provided the same does not reduce the Landlord's award.

**20.**    **SURRENDER AND HOLDOVER**.  On the last day of the Term, or upon any earlier termination of this Lease, or upon any re-entry by Landlord upon the Premises, (a) Tenant shall quit and surrender the Premises to Landlord "broom-clean" and in good order, condition and repair, except for ordinary wear and tear and such damage or destruction as Landlord is required to repair or restore under this Lease, and (b) Tenant shall remove all of Tenant's Property therefrom, except as otherwise expressly provided in this Lease.  The obligations imposed under the preceding sentence shall survive the termination or expiration of this Lease.  If any repairs are required to be performed in, to or at the Premises (pursuant to the preceding sentence or any other applicable provision of this Lease) upon the expiration or termination of the Term, Tenant shall cause such repairs to be performed, to Landlord's reasonable satisfaction, within 10 business days after the date on which this Lease is terminated or expired.  If Tenant fails to timely comply with the preceding sentence, then Landlord shall have the right to cause the repairs to be performed, at Tenant's expense, and all such expenses so incurred by Landlord shall bear interest (at the rate specified in the second sentence of **Section 22.3**) from the date the expense is incurred until the date paid, in full, by Tenant (inclusive of interest).  If Tenant remains in possession after the Expiration Date hereof or after any earlier termination date of this Lease or of Tenant's right to possession:  (i)  Tenant shall be deemed a tenant-at-will; (ii) Tenant shall pay 200% of the aggregate of the Base Rent and Additional Rent last prevailing hereunder, and also shall pay all actual damages sustained by Landlord, directly by reason of Tenant's remaining in possession after the expiration or termination of this Lease; (iii) there shall be no renewal or extension of this Lease by operation of law; and (iv) the tenancy-at-will may be terminated upon 30 days' written notice from Landlord.  The provisions of this **Section 20** shall not constitute a waiver by Landlord of any re-entry rights of Landlord provided hereunder or by law.

**21.**    **EVENTS OF DEFAULT**.

**21.1.**    **Chapter 11 Bankruptcy of Tenant**.  Landlord recognizes that Tenant is a Debtor in Possession in a chapter 11 reorganization case before the Bankruptcy Court in the Northern District of Illinois, Eastern Division, and that the  validity and enforceability of this Lease is subject to approval by that Bankruptcy Court. Further, Teneant recognizes that, if approved by the Bankruptcy Court, Tenant's post-petition obligations to Landlord, as set forth in this Lease, are not dischargeable in the chapter 11 case.  Therefore, it shall not be deemed a default by Tenant to continue to reorganize its debts in chapter 11.  Tenant further agrees that it will provide in its chapter 11 plan for the continued payment to the Landlord of the obligations set forth in this Lease. .

**21.2.**    **Default Provisions**.  Each of the following shall constitute a default by Tenant under this Lease: (a) if Tenant fails to pay Rent or any other payment when due hereunder within ten (10)  days after written notice from Landlord of such failure to pay on the due date; provided, however, that if in any consecutive 12 month period, Tenant shall, on three separate occasions, fail to pay any installment of Rent on the date such installment of Rent is due, then, on the third such occasion and on each occasion thereafter on which Tenant shall fail to pay an installment of Rent on the date such installment of Rent is due, Landlord shall be relieved from any obligation to provide notice to Tenant, and Tenant shall then no longer have a ten (10) day period in which to cure any such failure; or (b) if Tenant fails, whether by action or inaction, to timely comply with, or satisfy, any or all of the obligations imposed on Tenant under this Lease (other than the obligation to pay Rent) for a period of 30 days after Landlord's delivery to Tenant of written notice of such default under this **Section 21.2(b)**; provided, however, that if the default cannot, by its nature, be cured within such 30 day period, but Tenant commences and diligently pursues a cure of such default promptly within the initial 30 day cure period, then Landlord shall not exercise its remedies under **Section 22** unless such default remains uncured for more than a reasonable amount of time for Tenant to cure such default. .

22.    **RIGHTS AND REMEDIES**.

22.1.    **Landlord's Cure Rights Upon Default of Tenant**.    If Tenant defaults in the performance of any of its obligations under this Lease, Landlord, without thereby waiving such default, may (but shall not be obligated to) perform the same for the account, and at the expense of, Tenant upon compliance with any notice requirements and cure periods set forth in **Section 21.2**.

22.2.    **Landlord's Remedies**.    In the event of any default by Tenant under this Lease, Landlord, at its option, and after any applicable notice and cure period (as required pursuant to **Section 21.2**), but without additional notice or demand from Landlord, if any, as provided in **Section 21.2** has expired, may, in addition to all other rights and remedies provided in this Lease, or otherwise at law or in equity: (a) terminate this Lease and Tenant's right of possession of the Premises; or (b) terminate Tenant's right of possession of the Premises without terminating this Lease.    If Landlord elects to proceed under subsections (a) or (b) above, Landlord, at Landlord's option, may relet all or any part of the Premises from time to time, either in the name of Landlord or otherwise, to such tenant or tenants, for any term ending before, on or after the Expiration Date, at such rental and upon such other conditions (which may include concessions and free rent periods) as Landlord, in its sole but reasonable discretion, may determine.    Landlord shall have no obligation to accept any tenant offered by Tenant and shall not be liable for failure to relet or, in the event of any such reletting, for failure to collect any rent due upon any such reletting; and no such failure shall relieve Tenant of, or otherwise affect, any liability under this Lease.    However, Landlord shall use reasonable efforts to mitigate its damages but shall not be required to divert prospective tenants from any other portions of the Building.    In addition, for purposes of any reletting, Landlord is authorized to decorate, repair, alter and improve the Premises to the extent deemed necessary by Landlord, in its sole, but reasonable, discretion.    In the event of the termination of this Lease by Landlord pursuant to (a) above, Landlord shall be entitled to recover from Tenant (i) all damages and other sums that Landlord is entitled to recover under any provision of this Lease or at law or in equity, including, but not limited to, all fixed dollar amounts of Base Rent and Additional Rent accrued and unpaid for the period up to and including such termination date; (ii) all other additional sums payable by Tenant, or for which Tenant is liable, or in respect of which Tenant has agreed to indemnify Landlord, under any of the provisions of this Lease, that may be then owing and unpaid; (iii) all costs and expenses (including, without limitation, court costs and attorneys' reasonable fees) incurred by Landlord in the enforcement of its rights and remedies under this Lease; and (iv) any damages provable by Landlord as a matter of law including, without limitation, an amount equal to the positive difference, if any, between (x) the Rent provided to be paid for the remainder of the Term (measured from the effective termination date of this Lease and assuming Additional Rent during such period to be the same as payable for the year immediately preceding such termination increased in each succeeding year by four percent on a compounded basis) and (y) the fair market rental value of the Leased Premises (determined at the date of termination of this Lease) after deduction (from such fair market rental value) of the projected costs and expenses of reletting the Premises (including the anticipated costs of repairs, alterations, improvements, additions, legal fees and brokerage commissions) as reasonably estimated by Landlord (with both amounts discounted to present value at an interest rate equal to 6% per annum).    If Landlord elects to pursue its rights and remedies under Subsection (b) above, and the Premises are relet and a sufficient sum is not realized therefrom, then to satisfy the payment, when due, of Base Rent and Additional Rent reserved under the Lease for any monthly period (after payment of all Landlord's reasonable expenses of reletting), Tenant shall, in Landlord's sole judgment, either (i) pay any such deficiency monthly or (ii) pay such deficiency on an accelerated basis, which accelerated deficiency shall be discounted at a rate of 6% per annum.    If Landlord elects to pursue its rights and remedies under Subsection (b) above, and Landlord fails to relet the Premises, then Tenant shall pay to Landlord the sum of (x) the projected costs of Landlord's expenses of reletting (including the anticipated costs of repairs, alterations, improvements, additions, legal fees and brokerage commissions) as reasonably estimated by Landlord and (y) the accelerated amount of Base Rent and Additional Rent due under the Lease for the balance of the Term, discounted at a rate of 6% per annum.    Tenant agrees that Landlord may file suit to recover any sums due to Landlord hereunder from time to time and that such suit or recovery of any amount due Landlord hereunder shall not be any defense to any subsequent action brought for any amount not theretofore reduced to judgment in favor of Landlord.    If Landlord elects to pursue its rights and remedies under Subsection (b), then Landlord shall at any time have the further right and remedy to rescind such election and pursue its rights and remedies under Subsection (a).    In the event Landlord elects, pursuant to clause (b) of this **Section 22.2**, to terminate Tenant's right of possession only, without terminating this Lease, Landlord may, at Landlord's option, enter into the Premises, remove Tenant's

Property, Tenant's signs and other evidences of tenancy, and take and hold possession thereof, as provided in **Section 20** hereof; provided, however, that such entry and possession shall not terminate this Lease or release Tenant, in whole or in part, from Tenant's obligation to pay the Base Rent and Additional Rent reserved hereunder for the full Term, or from any other obligation of Tenant under this Lease. Any and all property that may be removed from the Premises by Landlord pursuant to the authority of the Lease or of law, to which Tenant is or may be entitled, may be handled, removed or stored by Landlord at the risk, cost and expense of Tenant, and in no event or circumstance shall Landlord be responsible for the value, preservation or safekeeping thereof. Tenant shall pay to Landlord, upon demand, any and all expenses incurred in such removal and all storage charges against such property so long as the same shall be in Landlord's possession or under Landlord's control. Any such property of Tenant not retaken from storage by Tenant within 30 days after the end of the Term, however terminated, shall be conclusively presumed to have been conveyed by Tenant to Landlord under this Lease as in a bill of sale, without further payment or credit by Landlord to Tenant.

    **22.3.** **Additional Rights of Landlord**. Any and all costs, expenses and disbursements, of any kind or nature, incurred by Landlord or Agent in connection with the enforcement of any and all of the terms and provisions of this Lease, including attorneys' reasonable fees (through all appellate proceedings), shall be due and payable (as Additional Rent) upon Landlord's submission of an invoice therefor. All sums advanced by Landlord or Agent on account of Tenant under this Section, or pursuant to any other provision of this Lease, and all Base Rent and Additional Rent, if delinquent or not paid by Tenant and received by Landlord when due hereunder, shall bear interest at the rate of 5% per annum above the "prime" or "reference" or "base" rate (on a per annum basis) of interest publicly announced as such, from time to time, by Bank One, Chicago, from the due date thereof until paid, and such interest shall be and constitute Additional Rent and be due and payable upon Landlord's or Agent's submission of an invoice therefor. Upon the breach or threatened breach by Tenant, or any persons claiming through or under Tenant, of any term, covenant or condition of this Lease, Landlord shall have the right to enjoin such breach and to invoke any other remedy allowed by law or in equity as if re-entry, summary proceedings and other special remedies were not provided in this Lease for such breach. The various rights, remedies and elections of Landlord reserved, expressed or contained herein are cumulative and no one of them shall be deemed to be exclusive of the others or of such other rights, remedies, options or elections as are now or may hereafter be conferred upon Landlord by law.

  **23.** **BROKER**. INTENTIONALLY OMITTED

  **24.** **MISCELLANEOUS**.

    **24.1.** **Merger**. All prior understandings and agreements between the parties are merged in this Lease, which alone fully and completely expresses the agreement of the parties. No agreement shall be effective to modify this Lease, in whole or in part, unless such agreement is in writing, and is signed by the party against whom enforcement of said change or modification is sought.

    **24.2.** **Notices**. Any notice required to be given by either party pursuant to this Lease, shall be in writing and shall be deemed to have been properly given, rendered or made only if personally delivered, or if sent by Federal Express or other comparable commercial overnight delivery service, addressed to the other party at the addresses set forth below (or to such other address as Landlord or Tenant may designate to each other from time to time by written notice), and shall be deemed to have been given, rendered or made on the day so delivered or on the first business day after having been deposited with the courier service:

| If to Landlord: | EBRO REAL ESTATE HOLDINGS, LLC |
| | 1330 West 43rd Street |
| | Chicago, Illinois 60609 |
| | Attn: Manager |
| | |
| If to Tenant: | Ebro Foods, Inc. |
| | c/o Silvio Vega |
| | 1330 West 43rd Street |
| | Chicago, Illinois 60609-3308 |
| | Attn: Silvio Vega |
| | |
| With a copy to | Forrest L. Ingram |
| | FORREST L. INGRAM P.C. |
| | 79 W. Monroe St., Ste 900 |
| | Chicago, IL 60603 |

**24.3.** **Non-Waiver**.  The failure of either party to insist, in any one or more instances, upon the strict performance of any one or more of the obligations of this Lease, or to exercise any election herein contained, shall not be construed as a waiver or relinquishment for the future of the performance of such one or more obligations of this Lease or of the right to exercise such election, but the Lease shall continue and remain in full force and effect with respect to any subsequent breach, act or omission.  The receipt and acceptance by Landlord or Agent of Base Rent or Additional Rent with knowledge of breach by Tenant of any obligation of this Lease shall not be deemed a waiver of such breach.

**24.4.** **Legal Costs**.  Any party in breach or default under this Lease (the "**Defaulting Party**") shall reimburse the other party (the "**Nondefaulting Party**") upon demand for any legal fees and court (or other administrative proceeding) costs or expenses that the Nondefaulting Party incurs in connection with the breach or default, regardless whether suit is commenced or judgment entered.  Such costs shall include legal fees and costs incurred for the negotiation of a settlement, enforcement of rights or otherwise.  Furthermore, in the event of litigation, the court in such action shall award to the party in whose favor a judgment is entered a reasonable sum as attorneys' fees and costs, which sum shall be paid by the losing party.  Tenant shall pay Landlord's attorneys' reasonable fees incurred in connection with Tenant's request for Landlord's consent under provisions of this Lease governing assignment and subletting, or in connection with any other act which Tenant proposes to do and which requires Landlord's consent.

**24.5.** **Parties Bound**.  Except as otherwise expressly provided for in this Lease, this Lease shall be binding upon, and inure to the benefit of, the successors and assignees of the parties hereto.  Tenant hereby releases Landlord named herein from any obligations of Landlord for any period subsequent to the conveyance and transfer of Landlord's ownership interest in the Property.  In the event of such conveyance and transfer, Landlord's obligations shall thereafter be binding upon each transferee (whether Successor Landlord or otherwise).  No obligation of Landlord shall arise under this Lease until the instrument is signed by, and delivered to, both Landlord and Tenant.

**24.6.** **Covenant to Run with the Land:  Landlord and Tenant agree that the provisions of the Lease constitute a covenant that runs with the land so that if any third party purchase the Premises, Tenant shall nevertheless continue to be entitled to occupy the Premises for the full term of the Lease.,**

**24.7.** **Survival of Obligations**.  Upon the expiration or other termination of this Lease, neither party shall have any further obligation nor liability to the other except as otherwise expressly provided in this Lease and except for such obligations as, by their nature or under the circumstances, can only be, or by the provisions of this Lease, may be performed after such expiration or other termination.

**24.8.**    **Governing Law; Construction**.    This Lease shall be governed by and construed in accordance with the laws of the state in which the Property is located.  If any provision of this Lease shall be invalid or unenforceable, the remainder of this Lease shall not be affected but shall be enforced to the extent permitted by law.  The captions, headings and titles in this Lease are solely for convenience of reference and shall not affect its interpretation.  This Lease shall be construed without regard to any presumption or other rule requiring construction against the party causing this Lease to be drafted.  Each covenant, agreement, obligation, or other provision of this Lease to be performed by Tenant, shall be construed as a separate and independent covenant of Tenant, not dependent on any other provision of this Lease.  All terms and words used in this Lease, regardless of the number or gender in which they are used, shall be deemed to include any other number and any other gender as the context may require.  This Lease may be executed in counterpart and, when all counterpart documents are executed, the counterparts shall constitute a single binding instrument.

**24.9.**    **Time**.  Time is of the essence of this Lease.  If the time for performance hereunder falls on a Saturday, Sunday or a day that is recognized as a holiday in the state in which the Property is located, then such time shall be deemed extended to the next day that is not a Saturday, Sunday or holiday in said state.

**24.10.**    **Authority of Tenant**.  If Tenant is a corporation, partnership, limited liability company, association or any other entity, it shall deliver to Landlord, concurrently with the delivery to Landlord of an executed Lease, certified resolutions of Tenant's directors or other governing person or body (i) authorizing execution and delivery of this Lease and the performance by Tenant of its obligations hereunder and (ii) certifying the authority of the party executing the Lease as having been duly authorized to do so.

**24.11.**    **WAIVER OF TRIAL BY JURY**.  THE LANDLORD AND THE TENANT, TO THE FULLEST EXTENT THAT THEY MAY LAWFULLY DO SO, HEREBY WAIVE TRIAL BY JURY IN ANY ACTION OR PROCEEDING BROUGHT BY ANY PARTY TO THIS LEASE WITH RESPECT TO THIS LEASE, THE PREMISES, OR ANY OTHER MATTER RELATED TO THIS LEASE OR THE PREMISES INCLUDING WITHOUT LIMITATION, AN ACTION FOR RECESSION OF THIS LEASE.

**24.12.**    **Relocation**.  INTENTIONALLY OMITTED.

**24.13.**    **Submission of Lease**.    Submission of this Lease to Tenant for signature does not constitute a reservation of space or an option to lease.  This Lease is not effective until execution by and delivery to both Landlord and Tenant.

**24.14.**    **Joint and Several Liability**.  All parties signing this Lease as Tenant shall be jointly and severally liable for all obligations of Tenant hereunder.

**24.15.** **Riders and Exhibits**. All Riders and Exhibits attached hereto and executed (or initialed) both by Landlord and Tenant shall be deemed to be a part hereof and hereby incorporated herein.

**24.16.** **Tenant's Option to Renew**.    Tenant shall have the option to renew this Lease (the "**Renewal Option**") for three (3) periods of five (5) years (the "**Renewal Term**").  The Renewal Option shall be deemed effectively exercised only if Tenant has given Landlord written notice of its election to exercise not later than nine (9) months, nor earlier than eighteen (18) months, prior to the expiration of the Term, and only then if Tenant is not in default (beyond the expiration of applicable notice and cure periods) hereunder at the time notice and at the time of the commencement of the Renewal Term.  All terms and provisions of this Lease shall be applicable during the Renewal Term, except that (i) the terms and provisions of this **Section 24.16** and **Sections 24.17, 24.18, and 24.19** shall not apply, and (ii) the Base Rent payable pursuant to **Section 1.10** during the Renewal Term shall be as follows:

| Period | Rent/Month/Period | Rent/Period |
|---|---|---|
| September 1, 2010 - August 31, 2015 | $        38,250 | $   459,000 |
| September 1, 2016 - August 31, 2020 | $        42,075 | $   504,900 |
| September 1, 2021 - August 31, 2025 | $        46,283 | $   555,390 |

**24.17.** **INTENTIONALLY OMITTED**

**24.18.** **Tenant's Right to Approve Other Tenants.**    So long as Tenant is not in default hereunder, the Tenant shall have the right to approve or disapprove any tenant Landlord should propose leasing remaining space in the Building to, provided that Tenant can reasonably assert that the odors or emissions associated with the proposed tenant's use are incompatible with Tenant's use of the Premises.

**24.19.** **Tenant's Right of First Refusal.**    Landlord shall give notice to Tenant of its intent to lease any other space in the Building, along with the contemplated lease offer (the "**Lease Offer**"), and Tenant shall have the right of first refusal (the "**Right of First Refusal**") on said other space upon the same terms of the Lease Offer, except that Tenant's lease term for the additional premises (the "**Tenant's Additional Premises Term**") shall be coterminous with the that of the Lease, and Tenant's base rent for the additional premises shall be proportionately increased or decreased, with regard to the amortization of improvement and leasing costs, for any difference between Tenant's Additional Premises Term and the term of the Lease Offer.   Tenant shall accept or reject the Lease Offer within three (3) days of receipt of the Lease Offer, or will be deemed to have forgone its Right of First Refusal.  In the event Tenant does not exercise its Right of First Refusal and Landlord fails to enter into a lease with the proposed tenant within one hundred eighty (180) days after submission by Landlord of the Lease Offer, Tenant's Right of First Refusal shall be deemed reinstated upon the same terms set forth above.

**24.20.** **INTENTIONALLY OMITTED**

**24.21.** **Tenant's Parking Area.**    At all times during the Term thereof, Tenant shall have the exclusive use of sixty (60) automobile parking spaces on the Property

[Signature Page to Follow]

**IN WITNESS WHEREOF**, Landlord and Tenant have duly executed this Lease as of the day and year first above written.

LANDLORD:

Ebro Real Estate, LLC,
a _____

By:        _____,

           a _____

By:        _____
Its:       _____


TENANT:

Ebro Foods, Inc.
_____,
a _____

By:        _____
Its:       _____

**EXHIBIT A**

**Property**

A PARCEL OF LAND COMPRISED OF A PART OF BLOCK 5 AND OF THE 32 FOOT STRIP OF LAND LYING EAST OF AND ADJOINING THE EAST LINE OF SAID BLOCK 5, TOGETHER WITH THE SOUTH ½ OF THE EAST AND WEST 30 FOOT PRIVATE ALLEY LYING NORTH OF AND ADJOINING THE NORTH LINE OF SAID BLOCK 5 AND SAID 32 FOOT STRIP OF LAND, AND PART OF THE NORTH AND SOUTH 100 FOOT PRIVATE STREET KNOWN AS PACKERS AVENUE LYING WEST OF AND ADJOINING THE WEST LINE OF SAID BLOCK FIVE AND THE SOUTH ½ OF SAID EAST AND WEST 30 FOOT PRIVATE ALLEY, ALL IN PACKER'S ADDITION TO CHICAGO, BEING A SUBDIVISION OF PART OF THE NORTH WEST ¼ OF SECTION 5, TOWNSHIP 38 NORTH, RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN, WHICH PARCEL OF LAND IS BOUNDED AND DESCRIBED AS FOLLOWS: BEGINNING AT THE POINT OF THE INTERSECTION OF THE WESTWARD EXTENSION OF THE NORTH LINE OF THE SOUTH ½ OF THE 30 FOOT PRIVATE ALLEY LYING NORTH OF AND ADJOINING THE NORTH LINE OF BLOCK 5 IN SAID PACKER'S ADDITION, WITH A NORTHWARD EXTENSION OF A LINE WHICH IS 17 FEET WEST FROM AND PARALLEL WITH THE WEST LINE OF SAID BLOCK FIVE AND RUNNING THENCE SOUTH ALONG SAID NORTHWARD EXTENSION AND ALONG SAID PARALLEL LINE, A DISTANCE OF 384.39 FEET TO A POINT WHICH IS 64.00 FEET NORTH FROM THE SOUTH LINE OF THE NORTH ¼ OF SAID SECTION FIVE; THENCE SOUTHEASTWARDLY ALONG A STRAIGHT LINE, A DISTANCE OF 33.91 FEET TO A POINT WHICH IS 7.00 FEET EAST FROM THE WEST LINE OF SAID BLOCK 5, AND 40.00 FEET NORTH FROM THE SOUTH LINE OF SAID NORTHWEST ¼ OF SECTION 5; THENCE EAST ALONG THE NORTH LINE OF THE SOUTH 40.00 FEET OF SAID NORTH WEST ¼ OF SECTION 5 (SAID NORTH LINE BEING ALSO THE NORTH LINE OF THE SOUTH 40.00 FEET OF SAID BLOCK 5), A DISTANCE OF 423.19 FEET TO AN INTERSECTION WITH THE EAST LINE OF THE STRIP OF LAND, 32.00 FEET WIDE, LYING EAST OF AND ADJOINING THE EAST LINE OF SAID BLOCK 5; THENCE NORTH ALONG THE EAST LINE OF SAID 32 FOOT STRIP OF LAND, AND ALONG A NORTHWARD EXTENSION THEREOF, A DISTANCE OF 408.45 FEET TO AN INTERSECTION WITH AN EASTWARD EXTENSION OF THE NORTH LINE OF SAID SOUTH ½ OF THE PRIVATE ALLEY LYING NORTH OF AND ADJOINING THE NORTH LINE OF SAID BLOCK 5; AND THENCE WEST ALONG SAID EASTWARD EXTENSION, ALONG THE NORTH LINE OF THE SOUTH ½ OF SAID PRIVATE ALLEY AND ALONG A WESTWARD EXTENSION THEREOF, A DISTANCE OF 446.7 FEET TO THE POINT OF BEGINNING, ALL IN COOK COUNTY, ILLINOIS.

Property Tax ID #'s :        20-05-114-007-0000

                                        20-05-500-002-0000

Property Address:  1330-38 West 43rd Street

**LEASE EXHIBIT B**

**The Premises**

