# SILGAN

## ORIGINAL

# INVOICE

SILGAN EQUIPMENT COMPANY
1301 DUGDALE ROAD * WAUKEGAN, IL 60085
PH: (847)336-0552   FAX: (847)336-8698

| | |
|---|---|
| Page Number- | 1 |
| Date | 12/21/09 |
| Customer | 1100087 |
| Brn/Plt | 895 |
| Related PO | - |
| Order Nbr | 89516032 KL |
| Invoice | 89500786 CL |

REMIT TO: Silgan Equipment Company
13074 Collections Center Drive
Chicago, IL 60693

Sold To: 01100087
EBRO PACKING COMPANY, INC
1330 WEST 43RD STREET
CHICAGO IL 60609

Ship To: 01100087
EBRO PACKING COMPANY, INC
1330 WEST 43RD STREET
CHICAGO IL 60609

Tax ID:
Tax Cert:

| Request Date | Customer P.O. | F.O.B. | Ship: |
|---|---|---|---|
| 12/21/09 | | TO BE PREPAID | Inst: |

| Ln/Rq Dt | DESCRIPTION/JUSTIFIC | Item Number | UM | Ship/Back/Cance | Price | Extended Price | Tax |
|---|---|---|---|---|---|---|---|
| 1.000 | P790/P895 Leases | P895LEASE | EA S | 1.000 | 14,025.0000 | 14,025.00 | Y |

Annual lease invoice for equipment at your Chicago IL
location. See attached list along with terms and conditions.
Any questions call Diana Wagner a847 625 3758 or email
diana.wagner@silganclosures.com
Mail check to:Silgan Equipment Co., 1301 Dugdale Rd.,
Waukegan IL 60085 Attn:Diana Wagner
Terms: net 30

| Terms | | | Sales Tax | Total Order |
|---|---|---|---|---|
| NET 30 | Net Due Date 1/21/10 | Tax Rt 8.000 | 1,122.00 | 15,147.00 |

# Silgan Equipment Company

1301 Dugdale Road
Waukegan, IL 60085

**Silgan Equipment ("Seller")**

Lease To  EBRO PACKING COMPANY INC
1330 W 43rd Street
CHICAGO, IL 60609

Ship To  EBRO PACKING COMPANY INC
1330 W 43rd Street
CHICAGO, IL 60609

**Terms**
Net 30 Days

This Invoice Schedules the Equipment Presently on Lease at Your
CHICAGO, IL 60609 Location

And Covers Charges for the Period  From 1/1/2010 to 12/31/2010

| Serial # | Machine | Ship Date | Annual $ |
|---|---|---|---|
| VE1270LJG | SEALING MACH.-STANDARD | 06/18/75 | $4,150.00 |
| VE1204LJG | SEALING MACH.-STANDARD | 08/30/74 | $4,150.00 |
| 6R17D-1552 | 6R17D HOPPER | 12/18/84 | $1,920.00 |
| 6R17D-1111 | 6R17D HOPPER | 08/30/74 | $755.00 |
| 51R9A-0936 | 51R9A DUD DETECTOR | 12/07/81 | $1,065.00 |
| 51R9A-0997 | 51R9A DUD DETECTOR | 01/09/84 | $1,840.00 |
| 53-89RTS CP | SEALING MACH CP | 08/30/74 | $0.00 |
| 77RTO MCP | SEALING MACH CP | 09/05/85 | $0.00 |
| 27-30DTOCP | HOPPER C.P. | 08/30/74 | $145.00 |
| **Sub Total** | | | **$14,025.00** |

Payment of this Invoice Subjects All
Equipment to the Attached Equipment
Lease Terms and Conditions.

**EQUIPMENT LEASE TERMS AND CONDITIONS**

SILGAN EQUIPMENT COMPANY ("Lessor") and the Lessee identified in Lessor's invoice agree that the machinery and equipment described on Lessor's invoice, together with any additional or replacement equipment or parts furnished by Lessor or Lessee during the term (hereinafter collectively called "Equipment"), is leased on the following terms and conditions, all of which are covenants:

1. This Lease shall be effective as of the date set forth in Lessor's invoice for the first annual rental payment. The term of the Lease shall be for the period and shall expire on the date set forth in Lessor's invoice. All payment terms, including interest and late fees, shall be as set forth in Lessor's invoice. The obligations of Lessee are not subject to any set-off, abatement, defense or counterclaim.

2. If this Lease is terminated by Lessor as to any Equipment due to Lessee's failure to keep or perform any of its covenants, Lessee shall not be entitled to any refund for rental paid and shall remain obligated for any unpaid rental. This Lease is non-cancelable.

3. This is a fully net lease. Lessee shall (a) keep the Equipment at Lessee's expense at all times in safe and good operating condition and maintain and perform all repairs to the Equipment and keep the Equipment in compliance with all applicable standards of Lessor, laws and insurance policies; (b) pay for all crating, transportation and shipping costs for original shipment to Lessee and whenever Equipment is returned to Lessor; (c) return the Equipment to Lessor in the same condition as received from Lessor, normal wear and tear excepted, within thirty (30) days after expiration or termination of this Lease; (d) pay all taxes (other than tax on income to Lessor) and charges levied which in any way relate to the Equipment; (e) satisfy promptly all liens against the Equipment other than liens created by Lessor; (f) provide all risk insurance for the replacement value of any Equipment while in Lessee's possession or in transit between its plant and Lessor's receiving point, which insurance shall name Lessor as an additional named insured and be in such form as Lessor may require.

4. Lessee shall not (a) permit anyone other than competent employees engaged in the regular course of its business to use the Equipment; (b) permit anyone other than competent employees or agents to repair, maintain and overhaul the Equipment; (c) remove the Equipment from the designated plant; (d) sublet, assign, mortgage, encumber or otherwise dispose of any Equipment or part thereof; (e) remove, alter or deface any Equipment number or inscription or permit the same; (f) operate the Equipment in violation of any law, regulation or order; or (g) add to, subtract from, change or alter any mechanism on any Equipment or permit the same, except as required by this Lease. The Equipment shall at all times remain personal property of Lessor or its affiliates as the case may be.

5. Lessee shall defend, indemnify and hold Lessor harmless from and against any and all claims, liability and costs, including reasonable attorneys' fees, arising out of any failure to perform its obligations under this Lease.

6. Lessor has the right, but not the obligation, upon reasonable notice to enter upon Lessee's premises to examine the Equipment and to determine Lessee's performance of or compliance with its covenants and obligations under this Lease.

7. If Lessee fails to keep or perform any of its covenants or obligations and such default continues for fifteen (15) days after Lessor has given notice thereof to Lessee, or if Lessee becomes or acknowledges in any way that it is insolvent or bankrupt or if a petition is filed alleging that Lessee is bankrupt or insolvent and Lessee or the trustee in bankruptcy then rejects this Lease or defaults under any of Lessee's obligations hereunder or if any distress, execution or attachment be levied upon the Equipment, or if Lessee shall make any assignment for the benefit of any of its creditors, Lessor may, in addition and without prejudice to its other lawful rights and remedies (including rights and remedies with respect to all rent then due or to become due), terminate the term of this Lease at any time and take immediate possession of the Equipment without becoming liable to Lessee for so doing. No return by Lessee of any Equipment or acceptance thereof by Lessor shall discharge Lessee from any of its covenants or obligations, or shall be deemed an admission by Lessor as to the condition of the Equipment returned or a waiver of any claim with respect to such condition.

8. EXCEPT AS EXPRESSLY CONTAINED HEREINAFTER IN THIS PARAGRAPH, LESSOR MAKES NO WARRANTY, EXPRESS, IMPLIED OR STATUTORY, REGARDING THE EQUIPMENT. LESSOR WARRANTS SOLELY THAT, AS OF THE DATE OF ORIGINAL DELIVERY OF THE EQUIPMENT TO LESSEE, (a) THE EQUIPMENT CONFORMS TO LESSOR'S SPECIFICATIONS AND (b) EACH PART OF NEW OR RECONDITIONED EQUIPMENT OF LESSOR'S OWN MANUFACTURE SHALL BE FREE FROM FAULTY WORKMANSHIP AND DEFECTIVE MATERIALS. LESSEE SHALL BE DEEMED TO WAIVE ANY AND ALL CLAIMS NOT RECEIVED IN WRITING BY LESSOR WITHIN THE EARLIER OF THIRTY (30) DAYS AFTER THE EQUIPMENT IS PLACED IN SERVICE BY LESSEE OR NINETY (90) DAYS AFTER THE DATE OF ORIGINAL DELIVERY OF THE EQUIPMENT TO LESSEE.
ANY SUCH CLAIM SHALL CLEARLY IDENTIFY ANY DEFECTIVE PART AND ANY PART NOT IN CONFORMANCE WITH LESSOR'S SPECIFICATIONS. THE WARRANTIES OF MERCHANTABILITY AND FITNESS FOR ANY PARTICULAR PURPOSE ARE EXPRESSLY EXCLUDED. RENEWAL OF THE TERM OF THIS LEASE

DMC:12/15/2004                                     1

SHALL NOT RENEW THE WARRANTY SET FORTH HEREIN AND, AFTER EXPIRATION OF THE EARLIER OF SAID THIRTY (30) OR NINETY (90) DAY PERIOD, AS APPLICABLE, LESSEE'S POSSESSION AND USE OF THE EQUIPMENT SHALL BE ON AN "AS IS, WHERE IS, WITH ALL FAULTS" BASIS. AS USED HEREIN, A DEFECTIVE PART IS A PART OF NEW OR RECONDITIONED EQUIPMENT OF LESSOR'S OWN MANUFACTURE WHICH MALFUNCTIONS AS A RESULT OF FAULTY WORKMANSHIP AND/OR DEFECTIVE MATERIALS. A PART WHICH WEARS OUT BECAUSE OF NORMAL WEAR AND TEAR OR IS DAMAGED AFTER RECEIPT BY LESSEE IS NOT A DEFECTIVE PART.

9. LESSEE'S EXCLUSIVE REMEDY AND LESSOR'S SOLE LIABILITY ON ANY CLAIM UNDER THIS LEASE OR IN CONNECTION WITH THE EQUIPMENT, WHETHER IN TORT, STRICT LIABILITY, NEGLIGENCE, CONTRACT, WARRANTY, STATUTORY OR OTHERWISE, SHALL BE LIMITED TO LESSOR REPLACING ANY NONCONFORMING OR DEFECTIVE PART OF NEW OR RECONDITIONED EQUIPMENT OF LESSOR'S OWN MANUFACTURE. ANY NONCONFORMING OR DEFECTIVE PART MAY BE REPLACED, AT LESSOR'S ELECTION, WITH A NEW OR RECONDITIONED PART. IN NO EVENT SHALL LESSOR BE LIABLE FOR DIRECT OR INDIRECT DAMAGES OF ANY KIND AND, SPECIFICALLY BUT NOT IN LIMITATION THEREOF, LESSOR SHALL NOT BE LIABLE FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES, INCLUDING LOST PROFITS, OR FOR INJURY TO PERSON (INCLUDING DEATH) OR TO PROPERTY (INCLUDING LOSSES RESULTING FROM LINE DOWN TIME OR PRODUCT WASTE) OCCASIONED BY OR GROWING OUT OF INSTALLATION, REMOVAL OR USE OF THE EQUIPMENT OR FOR FAULTY CAP APPLICATION OR SEALING FAILURE. IN THE EVENT LESSOR SHALL FAIL TO PROVIDE REPLACEMENT PARTS AS PROVIDED ABOVE, LESSEE'S REMEDY SHALL BE LIMITED SOLELY TO TERMINATION OF THIS LEASE, RETURN OF THE EQUIPMENT AND RECOVERY OF THE RENTAL PAYMENT FOR THE THEN REMAINING PORTION OF THE CURRENT TERM OF THIS LEASE.

10. Lessor shall not be liable to Lessee or any other person for any failure or delay in the performance of any obligation under this Lease due to events beyond its reasonable control. Lessee shall not be liable for delay or failure to take the Equipment as leased due to events beyond its reasonable control, except that Lessee shall be liable for such delay or failure with respect to any Equipment already in transit or in Lessee's possession. When the events operating to excuse performance by either party shall cease, this Lease shall continue in full force for the remainder of its term.

11. Upon the expiration of the term (whether initial or renewal) of this Lease, such terms shall be deemed renewed for an additional term of one (1) year from such expiration date at Lessor's then prevailing rental unless at least thirty (30) days prior to such expiration date either party shall give written notice of termination to the other party; provided, however, that such notice shall not be required from Lessor, and such renewal shall not occur without the written consent of Lessor, in the event Lessee fails to pay the annual rental by its due date or is otherwise then in default of any obligations under this Lease. Rentals on account of renewal shall be due and payable on such renewal date.

12. The provisions of this Lease may be modified only by an agreement in writing signed by Lessor.

13. Neither this Lease nor any rights with respect to any Equipment shall be assigned or sublet by Lessee without Lessor's prior written consent. Any such attempt by Lessee to so assign or sublet shall be void and give Lessor the right to terminate this Lease immediately, in addition to Lessor's other rights and remedies.

14. Lessor and Lessee irrevocably submit to the exclusive jurisdiction of the Courts of the State of Illinois or the United States sitting in Chicago, Illinois, in connection with any action or proceeding arising out of or related to this Lease, or breach thereof, or relating to the Equipment that is subject to this Lease.

15. Any disputes concerning the this Lease, or any rights or remedies arising hereunder, or relating to the Equipment or the use or operation thereof, shall be determined in accordance with Illinois law, without reference to its conflicts of laws provisions. In the event any provision, sentence or clause of this Lease is determined to be unenforceable or ineffective under Illinois law, only that provision, sentence or clause shall be stricken and the remaining provisions of this Lease shall continue to be effective in accordance with the terms of this Lease.

16. Any notice herein required or permitted to be given shall be in writing and shall be personally delivered or sent by overnight courier, or by registered mail or certified mail, postage prepaid, return receipt requested, to, and shall be deemed to have been given when such writing is received by the intended recipient thereof. For the purposes hereof, the addresses of the parties hereto, until notice of a change thereof is given as provided in this provision, shall be as follows. Lessee: at the address set forth in Lessor's invoice; Lessor: 1301 Dugdale Rd., Waukegan, IL 60085. All notices to Lessor shall be to the attention of the General Manager, with a copy to Lessor's General Counsel at 21800 Oxnard St., Woodland Hills, CA 91302.

DMC:12/15/2004                                                   2